### EDWARD R. MAYO vs. BOSTON & MAINE RAILROAD.
### SAME & wife vs. SAME.

To sustain an action for an injury received by the plaintiff through the defendant's negli-
gence, it is not necessary for the plaintiff to prove due care on his part by directly
affirmative evidence, but the inference of such care may be drawn from the absence
of all appearance of fault, either positive or negative, on his part, in the circumstances
under which the injury was received.

At a railroad station there was a double track, planked between the rails; and on each side
of this track was a platform leading to a highway. The station-house adjoined the
highway and one platform. A passenger, having arrived at this station in a train on the
track furthest from the station-house, alighted upon the platform adjoining that track,
stepped from the end of it down upon the highway, from four to six feet in the rear of
the train as it departed, and attempted to reach the station-house by crossing the double
track, over the planked space, at a proper place for passengers arriving like herself to
cross to it, where there was nothing except the departing train to obstruct her view along
the tracks, and where the platform on the other side would not retard her movements
upon arriving there. In this attempt, she was struck and injured by a train approaching,
on the track nearest to the station-house, from the direction in which the other train was
departing. *Held*, in an action by her against the railroad corporation for the injury, that
the mere fact that she began to cross at a time when her view along the tracks was thus
obstructed by the departing train was not conclusive that she did not use due care.

TWO ACTIONS OF TORT against a railroad corporation for an
injury to the female plaintiff.

At the trial of these actions together, before *Gray*, J., " there
was evidence that, on the morning of February 1, 1867, Mrs.
Mayo, with her son, six or seven years old, and a woman named
Thayer, bought tickets, and were carried in the defendants' cars
from Boston to Wyoming; that the defendants' railroad had
two tracks; that the station at Wyoming was on the west side
of the railroad; that the platform of the station, and a like plat-
form on the east side of the railroad, had no steps next the rail-
road, but had two steps at their north ends, at which point a
highway crossed the railroad on a level; that the outward bound
train ran upon the east or right hand track; that these passen-
gers, after the train had stopped, got out of the front end upon
the platform on that side, near its north end, and, immediately
after the train had started again, stepped down from the plat-
form upon the highway, and thence upon the railroad, in order
to cross to the station, the plaintiff leading her boy by the

hand; that Thayer, assisted by a man standing on the platform of the station, reached the platform; and that Mrs. Mayo, before reaching it, was struck by the locomotive engine of a train coming towards Boston on the west track, and severely injured."

Mrs. Mayo testified: " We got out of the cars quite near the end of the platform, on the opposite side of the tracks from the depot. I stepped backwards, holding back my dress, till all the cars of the train by which we went out had passed. Then I stepped down the two steps at the end of the platform upon the road; and as I got down upon the road, being very timid as to cars, I looked up and down the road, and towards the depot, to see if there was any flag or notice of any danger. A gentleman passed before me; and then Miss Thayer. As I stepped across, I heard no sound, except of the retreating cars; and my first impression was that they were backing. When I came to myself, I was lying upon the ground, I think between the two tracks. I saw no gate or flagman across the road; that was what I looked for. I did not see or hear anything. My eyesight and hearing were good. Just as soon as the way was clear, as soon as the train had moved off, I crossed. I was going to the depot. I knew my way from the depot. I had not the least information, or the slightest idea, that another train was expected at that time." On cross-examination she testified : " I meant to go to the depot; that is my only recollection. The last car had not moved away more than four to six feet, when I began to cross the railroad. As soon as it had passed, directly, I went down. I had no baggage except my parasol."

Miss Thayer testified: " I prepared to cross as soon as the cars had passed. We said nothing 'to each other while on the platform, except that we would cross; and we started in company. I had reached the inner track next the depot, when some one called out, and I therefore looked up and saw the engine coming, which was the first I knew of it. A gentleman crossed about six feet in front of me. I saw no train, no flag, and no person to indicate any danger or train coming; and I heard no one speak, no whistle, no bell. As I stepped down, I looked in every direction. There was no gate or flag or flagman on the

road. I had no idea of anything coming. I went almost straight across."

It was proved that at the time of the accident the following was one of the regulations established by the defendants for the management of their road : " Trains must stop before arriving at passenger stations, when another train is receiving or discharging passengers at such station. Enginemen will sound their whistle with a continued sound, when approaching a regular station where their train is not to stop. Express trains will pass through stations at a rate of speed not exceeding twentyfive miles, and extra trains not exceeding fifteen miles, per hour." And there was additional testimony, tending to show that the engine of the train which struck Mrs. Mayo passed the rear car of the departing train on the highway ; that it was running at a speed " faster than common ; " that no whistle was blown nor bell sounded on it ; that it consisted of nine or ten cars ; that the smoke from the engine of the departing train obscured the view of it as it approached ; and that when it stopped the rear car of it rested two thirds across the highway. It appeared that the spaces between the rails were planked, across the highway ; and the evidence left it uncertain whether the planking extended further down, between the platforms.

There was evidence tending to show that Alvan Lynde, the station-master, was standing on the platform adjoining the station-house, when Mrs. Mayo and her boy, and Miss Thayer, began to cross the tracks ; that, being aware of the approaching train, though by reason of the smoke of the departing train he could not see it, he sprang forward across the track on which it was coming, called to them to keep back, extended his arms to stop them, and had caught hold of Mrs. Mayo's arm at the moment when the engine struck her ; and that, if Mrs. Mayo had stopped when he extended his arms towards her, she would have escaped the peril ; but Mrs. Mayo and Miss Thayer, being recalled, testified that they did not see Lynde or any other person make such a motion to stop them as he described. There was also some evidence tending to show that Mrs. Mayo was crossing the tracks diagonally.

The question whether, on the evidence of which the foregoing is the substance, a jury would be warranted in finding verdicts for the plaintiffs, was reserved for the determination of the full court; if it would be, the cases to stand for trial; otherwise, judgments to be entered for the defendants.

*H. W. Paine & A. A. Ranney,* for the plaintiffs.

*B. F. Thomas & C. F. Choate,* for the defendants.

WELLS, J.   There was evidence tending to show a failure, on the part of those who had charge of the incoming train, to adopt the reasonable precautions required by a proper consideration for the safety of human life, as well as by the regulations of the road, in respect to the manner of approaching stations at a time when another train is receiving or discharging passengers.   The testimony also tended to show a noncompliance with the St. of 1862, *c.* 81, in regard to the crossing of highways. The question of negligence on the part of the defendants must therefore be submitted to a jury; unless the facts disclosed at the trial preclude any recovery, for the reason that her own fault contributed to bring the injury upon the female plaintiff.

It is well settled that, in order to recover for an injury on the ground of negligence of another party, it must appear that the plaintiff was in the exercise of due care in respect to the occurrence from which the injury arose; or that the injury is in no part due to his own fault or want of care.   The burden rests upon the plaintiff to make this appear.   Although, in form, a proposition to be established affirmatively, it is not necessarily to be proved by affirmative testimony addressed directly to its support.   The burden is held to be upon the plaintiff, for the reason that it is a subordinate proposition, necessarily involved in the more general one upon which the action is founded, to wit, that the injury to the plaintiff was caused by the negligent or wrongful conduct of the defendant.   If this be shown by evidence which excludes fault on the part of the plaintiff, the proposition of due care is established as effectually as by affirmative testimony.   All the circumstances under which the injury was received being proved, if they show nothing in the conduct of the plaintiff, either of acts or neglect, to which the injury may

be attributed in whole or in part, the inference of due care may be drawn from the absence of all appearance of fault.

In cases of accident like the present, the question of due care on the part of the plaintiff presents itself in two aspects; one being whether it was consistent with due care that she was in the place of danger; the other, whether, being in such a place, she used such reasonable precautions as were necessary for her safety or protection against the danger.

When one voluntarily puts himself in a place of exposure to injury, without some reason of necessity or propriety to justify him in so doing, and injury happens to him in consequence of his being in that place, he is not allowed to recover for such injury, although he may be able to show negligence in the conduct of the other party. The decisions in *Todd* v. *Old Colony & Fall River Railroad Co.* 7 Allen, 207, and *Hickey* v. *Boston & Lowell Railroad Co.* 14 Allen, 429, were made entirely upon this ground. The case of *Lucas* v. *New Bedford & Taunton Railroad Co.* 6 Gray, 64, stands mainly upon the same consideration. It was an element in the decision of the recent case of *Forsyth* v. *Boston & Albany Railroad Co.* 103 Mass. 510; and also in the case of *Bancroft* v. *Boston & Worcester Railroad Co.* 97 Mass. 275. In the case last named, the opinion of the court lays especial stress upon what is regarded as a fact in the case, that the plaintiff "attempted to pass across the track unnecessarily," instead of reaching the highway through a passage prepared for that purpose without going upon the track of the railroad.

Such cases stand upon a different footing from those in which the arrangements of the road for the accommodation of persons in taking or leaving the cars, or crossing the track, afford a reasonable justification to the party for being upon the track, and thus exposed to the dangers incident to such a position. Of the latter class are *Warren* v. *Fitchburg Railroad Co.* 8 Allen, 227, *Caswell* v. *Boston & Worcester Railroad Co.* 98 Mass. 194 and *Gaynor* v. *Old Colony & Newport Railway Co.* 100 Mass. 208. Although the burden of proof still remains upon the plaintiff, in these cases, to show the exercise of such a degree of

care as was appropriate to the place and occasion, yet the court will not attempt to decide the question of due care upon the preponderance of the evidence. The surrounding circumstances, and the whole conduct of the plaintiff in reference thereto, will ordinarily afford ground for such a variety of inferences as to make the verdict of a jury the only proper means to determine the essential fact. However indicative of carelessness the circumstances may seem to the court, if there be any evidence upon which it is competent for the jury to find that reasonable care was in fact exercised, it is proper to submit it to them. It is only when the whole evidence on which the plaintiff's case rests shows conclusively that he was careless, or when there is no evidence tending to show the contrary, that it is deemed to be the duty of the court to withdraw the case from the jury, or to direct a verdict for the defendant. *Gahagan* v. *Boston & Lowell Railroad Co.* 1 Allen, 187. In *Butterfield* v. *Western Railroad Co.* 10 Allen, 532, the omission of the plaintiff to take any observation with his eyes to ascertain whether a train was near, although he knew that he was coming upon the track, was an undisputed fact, for which there was no excuse, and no explanation to make it consistent with reasonable care on his part.

In the case now before us, there is some evidence, in the statements of Mrs. Mayo, tending to show the exercise of due care by her, and we perceive no distinct and unquestioned fact in her conduct, either of acts or omissions, which will enable us to hold her to be precluded from presenting all the circumstances to the consideration of the jury, in order that they may pass upon the question. According to her own testimony, she was crossing the track apparently within the highway, and at the proper place for passengers, alighting from the cars by which she had arrived, to cross to the station-house. We infer from the evidence that the crossing place was planked between the rails, so as to facilitate her movements; and there was no platform to retard them upon reaching the opposite side. There was no curve nor high bank near, to conceal the approaching train; and if the rear of the departing train had gone no more than six, or even four, feet beyond her when she began to cross,

yet, before reaching the further track, her means of observation would, in the natural course of things, be so enlarged as to give opportunity for circumspection in the attempt to cross the narrow space of a single track. We do not perceive, therefore, in the mere fact that she started to cross the railroad track so soon after the train by which she came had left the station, such clear and inexcusable want of care as to justify the court in withdrawing the case from the jury.

The conduct of Mrs. Mayo, as testified to by herself and others, must be weighed by a jury, to determine whether in fact she did use due care, both in attempting to cross at the time she did, and in the manner in which she endeavored to accomplish the crossing. If she went upon the track, where another train was to be expected at any time, when she was unable to see whether it was approaching or not, or without looking to see if the way was clear of danger, she did not use that reasonable precaution which every one is bound to exercise for his own protection in such places. We are unable to see how the accident could have happened without some want of proper care on her part. The inference from the result is very strong. But its force is applicable only in disproof of whatever testimony there may be tending to show the exercise of care. It presents only a question of preponderance; and however decided that preponderance, it does not transfer the determination of the issue from the jury to the court.

If Mrs. Mayo was passing towards the station obliquely down the track, as one witness testified; or if she persisted in crossing in spite of warnings from the station-master, as testified by him and another witness, such fact would tend to show fault on her part sufficient to prevent her from recovering. But these are not conceded to be facts; and the truth as well as the effect of such evidence must be passed upon by the jury. The cases will accordingly *Stand for trial.*