## SILVIUS H. LITTLE *vs.* INHABITANTS OF BROCKTON.

Plymouth. Oct. 16, 1877. — Jan. 14, 1878. MORTON, LORD & SOULE, JJ., absent.

In an action against a town for injuries occasioned by an alleged defect in a highway, there was evidence that the highway was twenty-six or twenty-seven feet wide between its edge on the east side and a ditch ten and a half feet wide and two and a half feet deep on the west side; that it was even, smooth and hard, and worked for travel the whole width, although the travelled part was on the west side and was from sixteen to seventeen feet in width; that there were two culverts under the road, fifty-six feet apart, the southerly one being filled up and disused; that near the northerly culvert a grassy bank sloped down gradually to the ditch, and became somewhat more abrupt a little further south, but still preserved its slope until, at the place of the accident, a point a few feet north of the southerly culvert, it suddenly retreated and became perpendicular; that there was no railing along the bank and no posts except at the northerly culvert; that the plaintiff was driving on the highway in a southerly direction with a heavily loaded wagon and two horses; that one of the horses was walking and both were under his guidance and control; that he met a wagon a few rods from the place of the accident, and turned out to the right for it, and went near the edge of the travelled road, but not outside of it; that he then saw a large wagon coming towards him in the centre of the road, and behind it a one-horse buggy, and so kept on in the same course, and did not turn back into the road again; that the wagon turned out so that there were about four feet between it and the plaintiff's wagon; that the plaintiff's wife, who was sitting at his left, said, " We'll be off the bank ; " that the plaintiff looked and saw that it was not dangerous in his opinion, and looked back at the wagon that had passed; that the plaintiff's attention was then attracted to the road, and he then saw the perpendicular place in the bank within three or four feet of his forward wheel; that he then found that he could not turn into the road without running into the buggy; that he could not stop or turn to the right because the wheels of his wagon were on the edge of the bank, and he would have upset sideways; that he thought the only chance to escape was to turn square off and go down the bank; that he did so, his wagon was overturned, and he injured. *Held,* that there was no evidence which would warrant the jury in finding that the plaintiff was in the exercise of ordinary care and prudence.

TORT for personal injuries alleged to have been caused by a defect in a highway called Main Street, in the defendant town, and about a mile from the centre of the village, on May. 29, 1874. Writ dated April 28, 1875.

At the trial in this court, before *Endicott*, J., there was evidence tending to show that the road in question was twenty-six or twenty-seven feet wide between its edge on the east side and a ditch on its west side, and about the same width for some distance to the north and south; that it was even, smooth and

hard, and worked for travel the whole width ; that there was a narrow footpath about a foot wide on each side ; that the easterly side of the road was more or less grassy ; that the travel was on the westerly side of the road, and that this travelled part was from sixteen to seventeen feet in width only, although the entire road was safe for travel ; that westerly of the roadway, and between it and the wall, was a ditch, ten and a half feet wide and two and a half feet deep, containing some six inches of mud and water ; that there were two culverts under the road, the southerly one of which was filled up and disused, and that the accident happened a few feet north of this southerly culvert ; that near the northerly culvert a grassy bank sloped down gradually to the ditch, and became somewhat more abrupt a little further south, but still preserved its slope until, at the place of the accident, it suddenly retreated, and became perpendicular ; that there was no railing along the bank at any point, and no posts, except two ancient posts that stood immediately against the northerly culvert.

There was also evidence tending to show that the plaintiff was a pedler, and had been accustomed to drive horses for many years, and that he was driving on the highway in a southerly direction, between four and five o'clock in the afternoon, with two horses attached to a loaded pedler's wagon, which weighed, together with the plaintiff and his wife, who was with him, about three thousand pounds ; that about a mile from the place of the accident the plaintiff's nigh horse became frightened and ran about three quarters of a mile ; that the plaintiff stopped the wagon, and kept it stationary for a minute, and then started at a gait not exceeding three miles an hour ; that the nigh horse was hopping up and down in a sort of short canter, and the plaintiff drove him so as to make him draw the load ; that the off horse was walking, and that the horses continued to proceed in this manner, under the guidance and control of the plaintiff, until the accident occurred ; that, after stopping as before stated and starting again, the plaintiff met two wagons at different points, and turned out to the right for each, and turned back again into the road ; that he then met a market wagon a few rods from the place of the accident, and turned out to the right for that, and went near the edge of the travelled road, but not

outside of it; that he then saw a large two-horse logging wagon coming towards him in the centre of the road, and behind it a one-horse buggy, with two ladies, and so he kept on in the same course, and did not turn back into the road again; that the logging wagon turned out so that there were about four feet between it and the plaintiff's wagon; that as the logging wagon passed, its driver threw up his hands; that the plaintiff's wife, who was sitting at his left, said, "We'll be off the bank;" that the plaintiff looked and saw that it was not dangerous in his opinion, and said, "No, I guess not," and looked back to see what the man in the logging wagon was doing, but he had passed beyond the line of the front of the plaintiff's wagon, so that the plaintiff could not see him, although he could see the back part of the logging wagon; that the plaintiff's off horse then pressed into the road, and attracted the plaintiff's attention, but did not turn the wagon, which the nigh horse was drawing; that the plaintiff then looked and saw that there was a place in the bank right ahead of him, within three or four feet of his forward wheel, which was perpendicular; that he immediately looked to see if there was a chance to turn into the road and pass along; that he then saw the buggy with the ladies in it coming up on the side of the road where the plaintiff was, about twelve or fourteen feet, or two thirds the length of the plaintiff's team, behind the logging wagon, with its off wheels about in line with the centre of the plaintiff's wagon; that the buggy had turned to the right, so as to be at an angle with the road, and had nearly stopped, the horse walking and being abreast of the plaintiff's horses, and the buggy was in such a position that, if the plaintiff had turned his horses to the left, he would have brought his nigh horse's head over the off forward wheel, and driven the pole of his wagon into the body of the buggy; and that, if he had stopped, the weight of his wagon would have sent its off wheels down the perpendicular bank, on the edge of which he now was, and caused the wagon to go over sideways.

The plaintiff testified as follows: "There my team stood. I could not go ahead, because there was no room. I could not stop, because my team was on the bank; my wheels were on the edge of the bank. I could not turn into the road, because there was a team there right in the way. I saw the only chance to

escape from it for myself and my wife was to turn square off. I drew the reins to turn square off, and my horses went down that bank, and hardly stumbled, and did not go off their feet at all, went to the wall some ten feet and a half, and there was not room enough; so when they got to the wall, my load was pressing on to them, and I had to turn them down straight. When I turned their faces down the street, the bank was so abrupt, so deep, the wagon went over with a crash. I saw the wagon was going over, and I sung out 'Whoa,' and drew in the reins, and my team stopped as suddenly as a team could stop, and they stood there." The plaintiff also testified that he received severe injuries from the accident.

On the above evidence the judge directed the jury to return a verdict for the defendant; and reported the case to the full court for the determination of the questions of law arising thereon. If the ruling was wrong, the case was to stand for trial; otherwise, judgment to be entered for the defendant.

Annexed to the report, and made a part of it, was a plan of the locality of the accident, from which it appeared that the two culverts were fifty-six feet apart, that the slope of the bank, forty feet from the southerly culvert, was one foot and eleven inches from the top to the ditch, and that the perpendicular descent at the southerly culvert was two feet and eight inches.

*P. E. Tucker*, for the plaintiff.

*G. O. Shattuck & C. W. Sumner*, for the defendant.

COLT, J. The plaintiff drove his horses and loaded wagon out of the travelled path of the highway into a ditch two and a half feet deep, containing some six inches of mud and water. The highway upon which he and his wife were travelling was without railing, but was constructed twenty-six or twenty-seven feet wide for the use of carriage travel, and was for this entire distance even, smooth and hard. The plaintiff having, as he testifies, the guidance and control of his horses, and having been warned by his wife that he was in danger of going off the bank, drove in the daylight so near the edge of this road, that in order to prevent going over sideways, as he says, he turned his horses square off the bank, and received the injury complained of.

For this voluntary act of the plaintiff, the evidence discloses no sufficient excuse. There is nothing in the circumstances of

the case which would justify a jury in finding that it was an act of ordinary care and prudence, which, without his fault, had become necessary to protect himself or his horses and wagon from greater danger. There is no reason shown for driving with horses, of which the plaintiff had control, so near the edge of the road. He claims that, being in that position, he found himself so near the bank that he could not stop without going off, and that two alternatives were presented to him, either to run into an approaching wagon, or to turn off as he did. But his position so near the bank was through his own want of due care, for which no excuse is shown, and being there he must choose either alternative at his own risk. A party cannot relieve himself from a dangerous position into which his own fault has brought him and hold the town responsible for the result. *Mayo* v. *Boston & Maine Railroad*, 104 Mass. 137. *Gaynor* v. *Old Colony & Newport Railway*, 100 Mass. 208.

It is not necessary to consider whether the want of a railing constituted a defect, or whether this accident would have been prevented if a suitable railing had been erected at this point.

*Judgment for the defendant.*