The Memphis and Ohio River Packet Company v. McCool.

---

No. 9707.

THE MEMPHIS AND OHIO RIVER PACKET COMPANY v. McCOOL.

WITNESS.—*Character.*—*Impeachment.*—Where, for the purpose of impeaching a witness, evidence is first put in showing bad character at his place of residence at the time of testifying, there is no error in then permitting the assailing party to show the bad reputation of the witness for a reasonable time, say two or three years before, at a former place of residence.

NEGLIGENCE.—*Evidence.*—*Relevancy.*—Where the suit is for an injury to a steamboat passenger by reason of the negligence of the defendant's servants in allowing a bale of cotton to fall upon and injure the plaintiff, evidence to show defects in the construction of the boat is irrelevant, and should be rejected.

SAME.— *Master and Servant.*— *Presumption.*—*Onus Probandi.*—Where it is shown that the act of the servant of a carrier of passengers has injured a passenger, the presumption of the servant's negligence attaches, so that the burden of proving due care is then on the carrier.

HARMLESS ERROR.—*Evidence.*—*Verdict.*—The Supreme Court will regard an error in admitting evidence as harmless only when it affirmatively appears from the record that it could not have influenced the verdict.

From the Vanderburgh Circuit Court.

*C. Denby* and *D. B. Kumler,* for appellant.

*J. M. Shackelford, A. Gilchrist, J. S. Buchanan, H. C. Gooding* and *C. H. Butterfield,* for appellee.

ELLIOTT, J.—The complaint of the appellee alleges that the appellant is a common carrier of passengers, owning and using, for the purpose of carrying passengers for hire, a steamboat called James D. Parker; that he was received as a pas-

senger on that boat; that while standing near the foot of a stairway used for receiving and discharging passengers and freight the appellant's servants, engaged in loading a bale of cotton goods of great weight, negligently suffered it to fall from the top of the stairway upon the appellee, seriously bruising and wounding him.

The questions requiring examination arise upon the ruling denying a new trial.

The appellee proved by Robert Roberts that, at the time of the trial, and in Evansville, the reputation of Jacob Hoglin, one of appellant's witnesses, was bad, and was afterwards permitted to prove by Andrew J. Rutledge what it was, prior to his removal to Evansville, in the town of Newburgh, eight miles distant, while he, Hoglin, lived there; a time two or three years anterior to his taking up his residence in Evansville. On cross-examination Roberts testified as follows: " I never heard any one in Evansville say anything about Hoglin's reputation except John Ingle; I heard him say it was bad a year ago next summer; I have heard my father and others talk about his reputation at Newburgh." It may be granted that Roberts' testimony is not of very much weight, yet it certainly does tend to prove the reputation at the time of the trial and at the place where the witness Hoglin then resided, and this gave the appellee a right to go back, within reasonable limits, to other times and places. Where there is evidence showing the character at the time of trial, the assailing party may follow back the line of the witness's life to ascertain what it was at a prior time. Reputations are, ordinarily, things of slow growth, but there may possibly be cases where the transformation from good to bad or bad to good is sudden and rapid. However this may be, the question is one of fact, and the jury are to be put in possession of such evidence as will enable them to intelligently comprehend and decide it. If an attacking party should prove the reputation for a month before the trial, would he not greatly strengthen his attack by travelling back a year or two and showing the continuous

The Memphis and Ohio River Packet Company *v.* McCool.

nature of the witness's reputation? So, if the witness assailed should show his reputation at the same period, would he not materially strengthen his defence of his character by evidence running back into his life for a reasonable time? Suppose, for illustration, the assailing party gives evidence of the witness's reputation for a brief time before the trial, as a day, a week, or a month, and the defending party gives evidence commencing at the same period, and extending back to other times, would not the case of the latter, all other things being equal, be made the stronger.

The cases are all agreed that the character at the time of the trial is the question in issue, but they are not all agreed as to how this issue shall be proved. Some of the cases in our own reports intimate that the evidence must be confined to the time of the trial; others say that the evidence may be directed to a reasonable time anterior to the trial; but, with the question as presented in the cases referred to, we are not at present immediately concerned, for here there was some evidence of the witness's reputation at the time of the trial, and this fact distinguishes the case in hand from those referred to. We think that the appellee had a right to take up the witness's reputation and trace it back, within reasonable bounds, for such a length of time as would enable the jury to decide upon the credibility of the witness who spoke of it with reference to the time of the trial, and we can not say that two or even three years was an unreasonable limit. In *People* v. *Abbott,* 19 Wend. 192, Cowen, J., said: " The character of the habitual liar or perjurer seven years since, would go at least to fortify the testimony which should now fix the same character to the same person. Witnesses must speak on this subject in the past tense. Character can not be brought into court and shown to them at the moment of trial. A long established character for good or for evil, is always more striking and more to be relied on, than that of a day, a month or a year."

Grandison Terry, a witness for the appellee, was asked, upon

his direct examination, this question: "How do the steps on the Parker compare with the steps on other steamboats?" Appellant's counsel objected, and stated specific grounds of objection. It will be seen, from our synopsis of the complaint, that there is no charge that the steamboat was improperly constructed or equipped, and that the sole cause of complaint is the negligence of the servants who were engaged in moving the bale of cotton goods. The appellant was not, therefore, called upon to meet any question as to the manner in which its boat was constructed; the only charge it was required to defend was that of the negligence of its servants. It was competent to prove the location of the stairway, its abrupt or gradual ascent; for these were matters connected with the occurrence which caused the appellee's injury. It was proper to show all the surroundings for the purpose of enabling the jury to correctly determine the question of negligence on the part of the appellant, as well as the question of the appellee's freedom from negligence. But it was not proper to bring into the case a question as to whether the stairway was or was not constructed with due care and skill. Evidence that the stairway was an insufficient and defective one might support a cause of action, but not the one declared on, and the appellee had no right to establish any other. He had, before asking the question we have copied, fully proved the situation, condition and kind of stairway on the steamboat Parker, and by this question and answer went much further and proved it to be not a proper one, as compared with those of other steamboats. The question calls for a comparison with other stairways, and carries the investigation beyond the particular boat on which the appellee received his injury. The question and answer would naturally induce the jury to believe that they were trying the question of the negligent construction of the stairway as well as the question of the negligence of the servants who were moving the bale of goods. Suppose that a railway company were sued for the negligence of a brakeman in using a brake, would it be proper on the trial of such a case

to prove that the brake was an improper or defective one? Or, to put another case, suppose an engineer were taking fuel and should carelessly drop it upon a passenger, and the company were sued for this cause, would it be proper to prove a defect in the locomotive? But the present case is even stronger, for the witness is asked to make a comparison, and this could only be for the purpose of showing that the stairway was an improper or defective one, because not as safe or suitable as those of other boats, and this surely was clearly outside of the issue. *Hudson* v. *Densmore*, 68 Ind. 391.

It is no doubt true that where the question is, which of two persons is the taller, or which of two stairways the steeper, a non-expert witness may state which he believes to be the taller or steeper, for this is really not the expression of an opinion but the expression of a conclusion derived from the observation of facts. If in this case the issue had been whether the Parker's stairway was steeper than that of another, or other designated boats, a witness who had seen them all might state which he believed to be the steeper. This was not, however, the issue, and the testimony was irrelevant. If a carrier were sued for negligence in using vehicles or boats of improper and unsafe character, it would not even then be proper to ask such a question as that propounded to the witness in this case. It certainly is not competent to ask for such a general comparison as was here done, if, indeed, it be competent to ask for a comparison at all. To permit counsel to enter into such an enquiry upon the direct examination would lay open an almost boundless field. It would bring into question all the boats to which the witness had reference, and would involve an enquiry into the construction and character of each and all of them. It would do even more than this; for it would lead to conflict of opinion as to which was the better and safer, and thus carry the investigation to most unreasonable lengths. We are speaking now of a direct examination, for it is sometimes proper on

cross-examination, in order to test the witness's competency as an expert, to permit enquiry as to his standards of comparison.

Appellee's counsel say that if the testimony was incompetent it was not material and did no harm. If we could clearly see that the testimony did not harm the appellant, we should not reverse for the error in admitting it, but this we can not do. The case is a close one upon the evidence, and we are unable to say that the admission of this incompetent testimony might not have turned the scale against the appellant. *Mays* v. *Hedges,* 79 Ind. 288.

It is contended by appellant's counsel that, where an injury happens to a passenger through the act of a servant, the burden of proving negligence is upon the passenger, and that the rule, that where an injury is proved a *prima facie* case is made, applies only to defects in machinery for carriage, and not to the acts of the carrier's servants. A distinction is attempted to be drawn between the liability for the condition of the machinery of transportation and the responsibility for the servants engaged to operate the machinery. The case of the *Federal, etc., R. W. Co.* v. *Gibson,* 11 Reporter, 443, is cited in support of the position of the counsel. If that case is to be understood as holding such a doctrine as counsel maintain, we can not give it our approval. We are unwilling to sanction the doctrine which the appellant insists on, for we regard it as unsound in principle and in conflict with the decided weight of authority. The duty of a common carrier is not only to provide safe machinery, but also to employ competent persons to operate it, and to see to it that they are not negligent. The duty is substantially the same as to the capacity and conduct of the servants as it is in respect to the means of transportation. If the machinery is perfect, and the servant who operates it negligent, there is a breach of duty. There is no reason for making a distinction between the character of the machinery and the conduct of the servants managing it. The

presumption of negligence upon proof of an injury to the passenger, whom the carrier is bound to carry safely, can not be divided so as to apply to the machinery and not to those who are entrusted with its management. The distinction attempted to be drawn is an arbitrary one without any supporting principle. The duty, as we have said, is not confined to the means of transportation, but extends to the competency, care and diligence of the servants employed by the carrier. As declared in *Crofts* v. *Waterhouse*, 3 Bing. 319, the servant " must have competent skill, and must use that skill with diligence." The principle embodied in this declaration has been approved by a long line of cases; among them, *McKinney* v. *Neil*, 1 McLean, 540; *Stokes* v. *Saltonstall*, 13 Peters, 181; *Holladay* v. *Kennard*, 12 Wal. 254; *Philadelphia, etc., R. R. Co.* v. *Derby*, 14 How. 468; *Pittsburgh, etc., R. W. Co.* v. *Ruby*, 38 Ind. 294 (10 Am. R. 111); *Bass* v. *Chicago, etc., R. W. Co.*, 36 Wis. 450 (17 Am. R. 495); *Caswell* v. *Boston, etc., R. R. Co.*, 98 Mass. 194. The duty as to the skill, care and diligence of the servants being essentially the same as that respecting machinery, there is no reason for making a distinction as to the burden between cases where the act of the servant is the cause of the injury, and that where the injury is caused by the machinery. In *Pittsburgh, etc., R. R. Co.* v. *Williams*, 74 Ind. 462, this court quoted with approval from the opinion in *Edgerton* v. *New York, etc., R. R. Co.*, 39 N. Y. 227, the following: " Whenever a car or train leaves the track, it proves, that either the track or machinery, or some portion thereof, is not in a proper condition, or that the machinery is not properly operated, and presumptively proves, that the defendant, whose duty it is to keep the track and the machinery in the proper condition, and to operate with the necessary prudence and care, has, in some respect, violated this duty." But it is not necessary to elaborate this point, for running through the cases referred to in this opinion, and by those cited in *Pittsburgh, etc., R. R. Co.* v. *Williams*, is a cord binding together responsibility for the

condition of the machinery and the conduct of servants, thus showing that the method of proof is the same whether the enquiry be as to the conduct of the servant or the condition of the machinery.

For the error in admitting the testimony of the witness Terry, the judgment must be reversed.