## Case No. 8,216.

### LEHMAN et al. v. STRASSBERGER.

[2 Woods, 554;[1] 3 Cent. Law J. 134.]

Circuit Court, N. D. Alabama. Jan.. 1875.

BANKRUPTCY—JURY TRIAL OF ISSUE — REVIEW BY PETITION OR IN ERROR—TRIAL OF ISSUE DURING VACATION—DEALING IN FUTURES.

1. Where the issue of bankruptcy vel non, is tried by a jury, the errors of the bankrupt court in the progress of the trial must be reviewed by writ of error, and cannot be reviewed by petition.

2. The bankrupt court has power to summon a jury to try the issue of bankruptcy vel non, during the vacation of the district court proper.

3. Where A. through a factor makes a contract with B. for the purchase or sale of cotton for future delivery, intending that there should be no delivery, but that the contract should be performed by the payment of differences, but this purpose is not shown to be also the purpose of B., *held*, that a note given by A. to the factor for money advanced by him to pay losses on such contracts. and for his commissions in making the same, was a valid and binding obligation.

[Cited in Clarke v. Foss, Case No. 2,852; Gilbert v. Gaugar, Id. 5,412; Third Nat. Bank v. Harrison. 10 Fed. 250; Hentz v. Jewell, 20 Fed. 593.]

[Cited in Baldwin v. Flagg, 36 N. J. Eq. 57; Conner v. Robertson. 37 La. Ann. 814; Pape v. Wright, 116 Ind. 505, 19 N. E. 460.]

[In error to the district court of the United States for the Middle district of Alabama.]

On the 18th of February, 1873, Lehman Brothers filed in the district court of the United States for the Middle district of Alabama, sitting as a court of bankruptcy, their petition in the usual form, and containing the necessary averments, praying that Albert Strassberger might be adjudged a bankrupt. On the 5th of March, the return day of the order to show cause, Strassberger demanded a jury trial of the issue, whether or not he had committed the acts of bankruptcy charged. On the 12th of April, after the sine die adjournment of the district court, the cause was submitted to the court upon the issues of law, and to the jury on the issues of fact raised by the pleadings. During the progress of the trial, exceptions were taken by counsel for petitioning creditors, and at its close a bill of exceptions was signed by the court. In their petition the petitioning creditors alleged that "the nature of their demand against the defendant was as follows, to wit: a commercial paper dated and executed in the city and state of New York, of which the following is a copy: "New York, September 10, 1872. Four months after date, I promise to pay to the order of Lehman Brothers. ten thousand dollars at the office of Lehman

Brothers, 133 Pearl street, New York. Value received. A. Strassberger." It was charged against the defendant as an act of bankruptcy. "that within six calendar months next preceding the date of the petition, being a trader, he had failed and neglected to pay said note or any part thereof, and still failed and neglected to pay the same, and had suspended and not resumed payment of his commercial paper within a period of fourteen days, in the suspension and nonresumption of the payment of the note above described." The other acts of bankruptcy charged were a conveyance of real estate to one Proskaur, and to Myer Weiss & Co., creditors, with intent to give them a preference, the defendant at the time of the conveyances being insolvent and contemplating insolvency. To this petition the defendant filed answer by way of defense, in which he alleged: (1) That he had not committed the acts of bankruptcy charged; and (2), that before the maturity of the note mentioned in the petition, defendant consulted his counsel, learned in the law, touching his liability to pay said note, making a full disclosure of all the facts connected with the giving thereof, and was advised by his counsel that he was not legally liable to pay the same, and for that reason he refused to pay the same at maturity. The petitioning creditors joined issue on the first defense, and demurred to the second, and moved that it be stricken out as insufficient in law. The court sustained the demurrer, and struck out the second defense.

The main controversy in the case seemed to turn upon the validity of the note from Strassberger to Lehman Brothers, the defendant claiming that the note was void, and, therefore, that the indebtedness, upon which the petition was based, did not exist. and, as a consequence, there could be no adjudication of bankruptcy.

The facts touching the consideration of this note, appeared from the bill of exceptions to be these: Lehman Brothers were cotton factors in the city of New York; as such they were many times employed by Strassberger to buy and sell cotton for him, for future delivery; they had so bought and sold cotton for him since 1868. It was the understanding between Strassberger and Lehman Brothers that in all sales or purchases of cotton by them for him, there was to be no delivery but that difference should be paid, except when special instructions were given to receive or deliver cotton. The contracts were made by Lehman & Brothers in the city of New York, and according to the rules of the cotton exchange of that city. By those rules, which were given in evidence, an actual delivery of cotton is provided for and required in every contract unless waived in some mode by the subsequent conduct or assent of both parties, or unless the party having the option to make or require an actual delivery, fails or declines to

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

exercise his option or to insist upon delivery. The consideration of the note upon which the proceeding was based, arose out of the transactions of Strassberger in such cotton contracts, and included losses on the contracts paid by Lehman Brothers for Strassberger, and their commissions for buying and selling. Sometime after the losses were incurred, and had been paid by Lehman & Brothers, Strassberger executed the note, and afterwards promised verbally and by letter to pay the same. It did not appear that the names of the parties with whom Lehman & Brothers as factors for Strassberger contracted, were disclosed to Strassberger, or that he knew otherwise who they were, or that they agreed there should be no delivery.

On this state of facts it was insisted by counsel for Strassberger that the note in question was void, because it was executed and payable in New York, and was based on cotton contracts made in New York, and because the statute of New York (2 Rev. St. pt. 1, c. 20, tit. 8, p. 924, art. 3) declares that "all wagers, bets or stakes made to depend upon any race, or upon any gaming by lot or chance or casualty, or unknown or contingent event whatever, shall be unlawful. All contracts for or on account of any money or property or thing in action, so wagered, bet or staked, shall be void." Upon the question so raised the bankrupt court charged the jury: "If you believe from the testimony that it was never intended there should be any actual delivery of the cotton in the future, but the understanding and agreement were that upon the day upon which delivery was to be made, the person agreeing to sell should pay to the person agreeing to purchase, the difference between the price at which the cotton was agreed to be sold and the price current on the day when it was agreed to be delivered, then you will find that the defendant has not committed any act of bankruptcy." This was the entire charge given to the jury before they retired. In a few minutes they returned into court and propounded the following question: "Suppose the jury believe from the evidence that there was to be a delivery of some of the cotton embraced by said future contracts, then what ought to be the verdict?" Thereupon the court instructed the jury: "That although they might have this belief, yet, unless they believed that the delivery actually made entered into the consideration of the note read in evidence, such belief ought to have no influence on their verdict. That the question submitted to them was whether the note read in evidence was given in consideration of losses or commissions on transactions in futures, in which there was no actual delivery of cotton intended by the parties; that Strassberger had sworn there was no other consideration for the note, and that it was for the jury to say whether they believed this evidence; if the jury believed this evidence, their verdict should be that the defendant had not committed an act of bankruptcy."

The jury returned a verdict for defendant. The case was brought up both by petition of review and by writ of error.

Samuel F. Rice and David Clopton, for Lehman Brothers.

John A. Elmore, H. A. Herbert, and D. S. Troy, for defendant.

WOODS, Circuit Judge. The first question presented for decision is, which method of bringing the case to this court for review is the proper one, by petition under the second section of the bankrupt act, or by writ of error? In Morgan v. Thornhill, 11 Wall. [78 U. S.] 75, Mr. Justice Clifford remarks: "Whether a writ of error will lie from the circuit to the district court, when the debtor opposes the petition that he may be adjudged a bankrupt, and the question whether he has committed an act of bankruptcy is tried by a jury, is not a question involved in the case before the court, suffice it to say at this time that such cases when tried by a jury, if the circuit court has any jurisdiction upon the subject, must be removed into the circuit court by writ of error." Where the question, whether the defendant has committed an act of bankruptcy, has been tried by a jury, the approved practice seems to be to carry the case to the circuit court on writ of error, and not in petition of review. This was done in the case of Phelps v. Clasen [Case No. 11,074], tried by Mr. Justice Miller, of the supreme court, in the circuit court for the district of Minnesota.

Section 8 of the bankrupt act [of 1867 (14 Stat. 520)] provides, that "writs of error may be allowed to the circuit courts from the district courts, in cases at law under the jurisdiction created by this act, when the debt or damages claimed amount to more than five hundred dollars." This must be construed in connection with that clause in the seventh amendment to the constitution of the United States, which declares, "that no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law." The common law here alluded to is not the common law of any individual state, but the common law of England, according to which facts once tried by a jury are never re-examined unless a new trial be granted in the discretion of the court before which the suit is depending, for good cause shown, or unless the judgment of such court be reversed by a superior tribunal on a writ of error, and a venire facias de novo awarded. U. S. v. Wonson [Case No. 16,750]. We must give the clause of the bankrupt act now under consideration such construction as will bring it into harmony with

this clause in the constitution. The fact of bankruptcy when tried by a jury can only be re-examined on motion for new trial or upon writ of error. A petition of review to re-examine a fact tried by a jury is a proceeding unknown to the common law. The fact that the issue is tried by a jury, makes it a case at law; and when the value of the bankrupt's estate/exceeds five hundred dollars, the debt or damages claimed may be said to exceed that amount. We must give this construction to section 8, or else hold that when the issue of bankruptcy is tried by a jury the case cannot be re-examined in the circuit court at all. It seems clear that the intention of the bankrupt act was to allow all cases in equity and at law, and all cases and questions of every kind arising under the act, to be re-examined in the circuit court. This is provided for in sections 2 and 8. I·think that it was the purpose of the act that the issue of bankruptcy, when tried by a jury, should be re-examined in the circuit court, and that this re-examination should be upon writ of error. When a jury has not intervened, the case may be taken up on petition.

I shall therefore proceed to consider the case as here upon writ of error. A motion is made to dismiss the writ on these grounds: (1) Because no writ of error will lie to remove the judgment of the bankrupt court for error intervening in the proceedings by which the party is adjudged a bankrupt; and (2) because the question of bankruptcy vel non, having been tried during the vacation of the district court proper, the remedy of the plaintiffs in error is by revisory petition under the second section of the bankrupt act, and not by writ of error, and this, notwithstanding the issue, was tried by a jury.

The first ground of the motion to dismiss the writ has been settled adversely by the supreme court of the United States in Insurance Co. v. Comstock, 16 Wall. [83 U. S.] 258, and therefore does not demand further notice.

In support of the second ground it is insisted that no jury trial could be properly had during the vacation of the district court, and therefore the proceeding by petition, and not by writ of error, is the proper one. To sustain this view, we are cited to a clause in the 41st section of the bankrupt act (14 Stat. 537; Rev. St. § 5020), which provides that the court "shall, if the debtor, on the same day," to wit, on the return day or adjourned day, "so demand in writing, order a trial by jury at the first term of the court at which a jury shall be in attendance to ascertain the facts of such alleged bankruptcy." It is insisted that this section only authorizes a jury trial at a term of the district court, and not at a bankrupt court held during the vacation of the district court; that the trial by jury in this case was unauthorized, and that therefore the case should

be brought to this court precisely as if no jury trial had taken place, to wit, by petition and not by writ of error. Conceding, for the sake of argument, that the construction given to the clause of the statute is the correct one, we do not think the inferences drawn by counsel for defendant follow.

When a petition is filed to place a party in involuntary bankruptcy, the alleged bankrupt may take issue upon the acts of bankruptcy charged, and have the issue tried either by the court or a jury, at his option. If he chooses the former, he does so with the distinct knowledge that any error committed by the court must be corrected by petition to the circuit court. If he demands a trial by jury, he is entitled not only to such trial, but both parties are entitled to all the incidents which necessarily follow such trial, according to the course of the common law. One of these is the constitutional right to have the facts found by the jury re-examined by the appellate court upon writ of error, and in no other way. In this case, the alleged bankrupt demanded a trial by jury. It is clear that the fact that the court erred as to the time when the trial should take place, and as to the jury by which the issue should be tried, does not deprive either party of the right to a writ of error. The court had jurisdiction of the subject matter and of the parties, although it may not have had authority to summon a jury at that time, still that does not make its proceedings void, but only voidable as for error. The fact stands that there has been a jury trial, and that the judgment of the court is based upon the finding of a jury. To hold that because the court erred in calling a jury in vacation and not in term time, the writ of error must be denied, is to deprive the parties without their consent of a right secured by the constitution of the United States.

The record does not show that the petitioning creditors demanded that the jury trial should take place when it did. The defendant had demanded his trial by jury. So far as appears from the record, neither party objected to the jury on the ground that the court had no authority to impanel it in vacation of the district court. If there has been a waiver by this action of any right, it is not the right to a writ of error, but the right of either party at this day to raise any question touching the legality of the jury. But I think a fair construction of the first and forty-first sections of the bankrupt act shows that the bankrupt court may impanel a jury to try the issue of bankruptcy vel non, during a vacation of the district court.

The first section declares "that the several district courts of the United States be and they are hereby constituted courts of bankruptcy. The said courts shall be always open for the transaction of business under this act, and the powers and jurisdiction hereby granted and conferred shall be exercised as well in vacation as in term time,

and a judge sitting at chambers shall have the same powers and jurisdiction, including the power of keeping order and of punishing any contempt of his authority, as when sitting in court." The evident meaning is that the power of the bankrupt court may be exercised as well in vacation as in term time of the district court proper.

Among the powers and jurisdiction of the bankrupt court, is the power to try an issue of bankruptcy vel non, by a jury. The power, by the express words of the act, may be exercised in vacation, unless it is taken away by the expression used in the forty-first section of the act already quoted, that "the judge shall order a trial by jury at the first term of the court at which a jury shall be in attendance." Does this mean the first term of the district court proper? We think not. (1) Because the policy of the bankrupt act is to provide for a speedy and summary settlement of the bankruptcy. If a jury trial is demanded, and no jury can be summoned until the regular term of the district court, the question of bankruptcy may be suspended for a period of five or six months. The fact that the adjudication relates back to the filing of the petition shows that no such delay was contemplated. (2) A construction so opposed to the spirit and purposes of the law should be avoided if possible. The phrase, "at the first term of the court at which the jury should be in attendance," may, without violence to the language of the bankrupt act, be referred to a time when the district judge is holding a session of the bankrupt court, as distinguished from his sittings in chambers. Or, it may be referred to the clause of section one, namely: "Said courts may sit for the transaction of business in bankruptcy at any place in the district, of which place, and the time of holding the court, there shall have been given notice, as well as at the place designated by law for holding said courts." The construction, that no jury trial can take place except during a term of the district courts does violence to the first section of the bankrupt act, and limits the powers of the bankrupt court in vacation, when that section declares they shall be the same as in term time.

For these reasons, I am of opinion that the bankrupt court may, in its discretion, summon a jury during the vacation of the district court. In every point of view, therefore, the second ground for dismissing the writ of error is not well taken. In my judgment, therefore, the case is here properly up on writ of error, and must be so considered.

The assignments of error, by the petitioning creditors, relate mainly to the charge of the court touching the validity of the note made by Strassberger to Lehman Brothers. It is claimed by petitioning creditors, that the charge is erroneous, and the question is thus presented, whether, under the facts already cited. the note in question was a binding obligation upon Strassberger. Let it be conceded, that contracts for the future delivery of cotton, when it is agreed there shall be no delivery, but that differences shall be paid, are wagering contracts, and void as between the parties. That is not the case shown by the record here. The parties here are not parties to any contract for the sale or delivery of cotton. Lehman Brothers, as far as appears from the record, never at any time sold to or bought from Strassberger a pound of cotton. The parties with whom Strassberger contracted were persons other than Lehman Brothers, whose names are not disclosed. Lehman Brothers were only factors of Strassberger to make contracts with other parties. When, therefore, they sue Strassberger to recover money paid by them for him, on such contracts, and their compensation for their services, the court is not called upon to enforce a contract against the law between the parties to that contract, but simply to enforce the collection of a note, the consideration of which is money advanced and services performed by agents for their principal. If Strassberger was suing the parties with whom he contracted, either to buy or sell cotton for the difference between the contract and the market price, then the case would approach more nearly to what is forbidden by the New York statute.

This is the case, to put it in its strongest light for the defendant, of an agent who advances money to his principal to pay losses incurred in an illegal transaction, and takes his note for the money so advanced. In such a case, the contract between the principal and agent, made after the illegal transactions are closed, although it may spring from them and be the result of them, is a binding contract. Durant v. Burt, 98 Mass. 167; Petrie v. Hannay, 3 Term R. 418; Owen v. Davis, 1 Bailey, 315; Armstrong v. Toler, 11 Wheat. [24 U. S.] 274. It has even been held, that partners who have been engaged in illegal transactions shall be held to account to each other for profits of such transactions. Brooks v. Martin, 2 Wall. [69 U. S.] 78. The fact, that the agent includes in a note given for money paid by him for losses in an illegal transaction, compensation as for his services, does not taint the note. Such commissions would not avoid the note unless given for services as agent in a transaction which is not merely malum prohibitum but malum in se.

We must look at the contract for future cotton, as originally made, to determine its legality or illegality. Strassberger testifies, and in this he is uncontradicted, that it was the understanding between him and Lehman Brothers, that in all sales or purchases of cotton by them for him for future delivery, no cotton should be actually received or delivered, but only the differences paid, except when special instructions were given to receive or deliver cotton; and the record shows that he did, on more than one occasion, elect to deliver cotton. If he reserved

the option to receive or deliver, the contract was legal in all respects, even though he might have had a purpose in his own mind not to receive or deliver, and had communicated that purpose to his agents. The question is, did he communicate that purpose to the parties not named, with whom he contracted? There is no evidence that he did. On the face of his contract, he binds himself to deliver cotton, and the other party binds himself to receive it. Now what effect can the mental purpose of Strassberger to pay or to demand differences instead of delivering the cotton have upon the contract, when that purpose is unknown to the other contracting party? Here is no bet or wager. "It cannot be a wager unless both parties are cognizant of the facts." Hibblewhite v. McMorine, 5 Mees. & W. 462.

[I think, therefore, that the charge of the learned judge now under consideration was erroneous for two reasons: (1) Because the record does not show that the contracts between Strassberger and third parties, referred to in his testimony, were illegal; and (2) even admitting that they were, it does not follow that the note given by Strassberger for losses paid and commissions earned by Lehman Bros. in respect of such contract were void.] [2]

As error appears in the record which may have been to the prejudice of the petitioning creditors, it follows that the judgment of the district court must be reversed, and the cause remanded to that court with directions to award a venire facias de novo. Judgment reversed.

NOTE [from original report in 3 Cent. Law J. 134]. This important opinion was prepared by Judge Woods after an elaborate argument, and is entitled to unusual weight. In view of the popular impression that none of the contracts can be enforced based on "puts" and "calls" and "future deliveries," this opinion comes opportunely. In the course of the opinion, it is declared that if the parties reserved the option to receive or deliver, the contract was legal in all respects, even although a party might have had a purpose in his own mind not to receive or deliver, and have communicated that purpose to his agent. On the face of the contract, it is valid, and the intention of the one party to demand differences in cash, if not mutually agreed to, will not make the contract invalid. The factor, agent, or commission merchant can recover for his advances and commissions, on a contract which is malum prohibitum, provided it be not malum in se, and contracts for "futures" are not of this latter character. The New York statute, quoted above, is far more comprehensive as to the wagering contracts which cannot be enforced than the Missouri statute. See Wag. St. p. 661. And yet this case was conceded to be a New York contract, and was sustained. Importance is attached to the fact that the contract was based on the rules of the Cotton Exchange of New York, which are almost the same as the rules of the Merchants' Exchange of St. Louis. Pari passu, such contracts between members of the Exchange, based on their own laws, which are laws unto themselves, will be enforced in the Missouri courts, the statutes of the state not prohibiting them. The very recent case of Waterman v. Buckland [1 Mo. App. 45], in St. Louis court of

appeals, does not affect the question, inasmuch as the contract there, on its face, showed a mere wager as to the rise or fall of mess pork, on a certain day, at which time the difference was to be paid in cash, and both parties expressly contemplated there should be no delivery. Though called by parties an "option contract," only cash could pay the difference. The case of In re Chandler [Case No. 2,590], bankrupts, decided in April, 1874, by Judge Blodgett in United States district court of Illinois, apparently, but does not in fact, conflict with Lehman Bros v. Strassberger. In Chandler's Case, the suit was between the original parties, and the proof showed that both parties contemplated no delivery, and were parties to a scheme to create a "corner" in oats for June, 1872. This precise question, as between the wagering parties, wherein no factor or agent intervened, was not passed upon by Judge Woods in Lehman v. Strassberger, and in Waterman v. Buckland, and in Re Chandler, supra, the right of the factor to recover on such contracts was not involved.