3L 740
4L 232
1pi581

## MARSHALL v. THRUSTON.

1. CONTRACT. *Dealing in futures. Intention of the parties make the contract lawful or unlawful.* A contract for the sale of State bonds, to be delivered at a future day, is valid, although the seller have not the bonds, nor any other means of getting them than by buying them in the market, if the parties intend that they shall be delivered and the price paid; but it is otherwise if the real intention of the parties be to speculate in the rise and fall of the price of the bonds.

2. SAME. *Same. Notes given for losses in speculation to agent or broker of losing party.* In a suit brought upon notes given for losses in speculations, by time contracts in public bonds, to a bank acting as the agent or broker of the losing party, the court charged in substance: "If the bank furnished defendant with money for the purpose of enabling him to engage in an unlawful undertaking, it could not recover the amount so furnished; but if the defendant employed the bank as his agent or broker to effect sales of bonds with parties in New York or elsewhere, and it was the intention of the defendant and such parties that no bonds should pass, and only the difference between the contract price and the market price at the time fixed for executing the contract should be paid to the one or the other as it happened, and the defendant sustained losses which the bank paid, and the defendant afterward gave the bank his notes for the amount so paid, the bank might recover the amount by action." Held, to contain no error of which the defendant could complain.

---

### FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county.   FRANK T. REID, J.

A. S. COLYAR for Marshall.

J. C. BRADFORD for Thruston.

COOPER, J., delivered the opinion of the court.

The defendant in error, Thruston, as trustee of the

People's Bank, under an assignment for the benefit
of creditors, brought this suit against the plaintiff in
error on three notes executed by him to the bank,
dated August 17, 1872, at eighteen, twenty-four and
thirty months, with interest from date, for $860 each.
These notes, with others which have been paid, were
given by Marshall to the bank on settlement of cer-
tain transactions in buying and selling Tennessee State
bonds on time during the years 1869, 1870 and 1871.
Verdict and judgment were rendered in favor of the
plaintiff below, and the defendant appealed in error.

The transactions in question constitute what is known
as dealing in "futures," which is explained by the
witnesses to mean that the party buys or sells so
much of a given article, in this case bonds of the
State of Tennessee, at a given price for delivery at
a future day, depositing a "margin," or sum of money,
to cover the possible rise or fall in the price of the
article.    At the expiration of the stipulated time there
is a gain or loss in proportion to the rise or fall in
price.    Each party may, if there be no agreement to
the contrary, demand a performance of the contract by
a delivery of the article and payment of the price,
although usually it seems no delivery is expected, but
the transaction is closed by the payment by the loser
to the winner of the difference between the price
agreed and the actual market price at the time.    Evi-
dence was introduced on the trial by the plaintiff
tending to show that the bank, as the agent or broker
of the defendant, caused contracts to be made at New
York with third persons in accordance with the de-

fendant's instruction, and paid the losses, and that the bank had no interest in the transactions except a brokerage commission of one-eighth of one per cent. on the amount of the sale or purchase. On the other hand, evidence was introduced by the defendant tending to show that contracts were not made with third persons through the bank, but with the bank as a principal; and, at any rate, if the bank acted as agent, it was with full knowledge that the transactions were not real but gambling wagers, and advanced the money to enable the defendant to engage in such transactions.

In view of the evidence there may be three theories of the relation of the bank and defendant throughout these transactions outside of the relation insisted upon by the plaintiff below. One is, that the parties knowingly dealt with each other as principals; another is that the bank induced the defendant to believe that the transactions were real, when in fact no third persons were dealt with; and the third, that there were contracts made, through the bank as an agent, between the defendant and third persons, which, however, were understood by both of the latter to be mere wagering contracts, without any intention to demand or deliver the bonds.

The Circuit Judge, upon issues joined which brought the legality of the transactions squarely in question, charged the jury upon each of these aspects of the transactions. He said to them in substance, "A contract for the sale of goods to be delivered at a future day is valid, even though the seller has not the goods, nor any other means of getting them than to go the

market and buy them. But such a contract is only valid when the parties really intend that the goods are to be delivered by the seller and the price paid by the buyer. If, under the guise of such a contract, the real intent be merely to speculate in the rise and fall of prices, and the goods are not to be delivered, but one party is to pay the other the difference between the contract price and the market price of the goods at the dates fixed for executing the contracts, then the whole transaction constitutes nothing more than a wager, and is illegal and void." If, he added, the defendant and the bank were engaged as principals in a pure speculation in the rise and fall of the prices of Tennessee bonds, and the notes in suit were given to secure the amount of losses sustained by the defendant in the adventure, the law will refuse to aid in their collection. If there were in reality no parties in New York with whom the bank contracted as the defendant's agent for the sale or purchase of bonds, and defendant and the bank both intended to speculate in the rise and fall of prices, neither intending to demand or make delivery of the bonds, then the contracts were against public policy and void; and if the notes were given in satisfaction of losses thus sustained by defendant in carrying out such contracts, they cannot be enforced.

To this extent the charge is conceded to be substantially in accord with authority and correct. *Watkins* v. *Frierson,* MS. opinion of Judge McFarland at the present term; *Grizewood* v. *Blanc,* 11 C. B., 526;

*Hibblewhite* v. *McMorrin,* 5 M. & W., 462; *Bigelow* v. *Benedict,* 70 N. Y., 202.

On the third aspect of the relation of the parties under the defendant's proof, the judge charged the jury: "If you find that the relation between defendant and the bank was that of principal and agent, and that defendant was the principal, and employed the bank as his agent and broker to effect sales of Tennessee bonds on his behalf with parties in New York or elsewhere, although it may have been the intention of defendant and the party in New York that no bonds should pass or change hands, but on the contrary, the difference between the contract price and the market price of the bonds at the date fixed for executing the contract, should be paid by the one or the other as they happened to lose; in other words, although the contract between the two principals may have been a pure speculation in the rise and fall of prices, and therefore illegal and void, yet if, under such a contract, the defendant sustained losses, and the Peoples Bank, at his request, paid the amount of such loss, or if the bank paid such losses without being requested, and defendant afterward ratified their action and gave his notes for the amount so paid, such amount can be recovered of him in this action." His Honor adds, "If the Peoples Bank furnished defendant with money for the purpose of enabling him to engage in an unlawful undertaking, it could not recover of him the amount so furnished."

We understand the charge to be in substance that if the bank knowingly assisted the defendant by an

Marshall *v*. Thruston.

advance of money and active agency, though not as principal, to gamble in the rise and fall of bonds, no recovery can be had; but if the bank merely acted as his agents in effecting contracts between him and third persons for the sale or purchase of bonds on time, the defendant and third parties intending to speculate in the rise and fall of prices, and defendant suffered losses which were paid by the bank, and these payments were made at his request, or subsequently ratified by him by the execution of his notes for the amount, a recovery could be had. In this view the charge seems to be in accord with the authorities, and is certainly unexceptionable so far as the plaintiff in error is concerned. *Smith* v. *Bouvier*, 70 Penn., 325; *Brown* v. *Speyers*, 20 Gratt., 296; *Ramsey* v. *Berry*, 65 Me., 570; *Warren* v. *Hewitt*, 45 Ga., 501; *Lehman* v. *Strossberger*, 2 Woods, 554.

The defendant's counsel, both by not asking for more specific instructions, and by their argument in this court, seem to concede this view of the charge. Their argument now is that knowledge on the part of the bank of the nature of the transactions, in the events supposed, would make it so far an aider and abetter in the gambling, that the notes subsequently given would not be valid without a new consideration. They cite *Bates* v. *Watson*, 1 Sneed, 376; *Lea* v. *Collins*, 4 Sneed, 394; *Johnson* v. *Byerly*, 3 Head, 194. But these cases only hold that money lent for the express purpose of accomplishing an illegal object, and applied by the borrower to that purpose, cannot be recovered, and that a subsequent promise having no

other support than the original loan, will not be sufficient to sustain a recovery. But the court say, in the first of these cases, that the test, whether a demand connected with an illegal transaction can be enforced at law, is whether the plaintiff requires any aid from the illegal transaction to establish his claim. In the case supposed by the Circuit Judge in that part of his charge now under consideration, he tells the jury that if the money was advanced by the bank for the purpose of enabling the defendant to engage in . the illegal transactions, there can be no recovery, and it is only upon the ground of a subsequent advance of the money to pay the losses incurred, the money advanced being the consideration, that a recovery can be had. In this view it is clear that the demand of the bank, although connected with the illegal transactions, can be enforced without any aid from the transactions. The transactions created the necessity for the money, and were the occasion of the loan, while the demand is based on the loan of the money after the contracts had been executed. *Armstrong* v. *Toler*, 11 Wheat, 258; *Planters Bank* v. *Union Bank*, 16 Wal., 500; *Jones* v. *Davidson*, 2 Sneed, 448; *Ohio Ins. & Tr. Co.* v. *Merchants Ins. & Tr. Co.*, 11 Hum., 1; *Faikney* v. *Reynous*, 4 Burr., 2069. Mere knowledge of the fact that money was borrowed to be used for an illegal purpose will not defeat the right of recovery. *Puryear* v. *McGavock*, 9 Heis., 461.

The evidence in this case does not so largely pre-

ponderate, if it preponderates at all, in favor of the plaintiff in error as to justify this court in interfering with the verdict of the jury. And there being no error in the charge, the judgment must be affirmed.