JOHN H. DWIGHT and Others, Respondents, *v.* HOWARD G. BADGLEY, Appellant.

*The knowledge of an agent binds his principal — intent, how determined, and from what inferred — evidence as to gambling contracts.*

The knowledge of a person's agent is his knowledge, and is binding upon him.

It is competent for a person to testify that he engaged in a transaction in good faith or with a particular intent, but if the transaction be such that, from it or from other evidence, a different intent than the one testified to by him may be fairly inferred, the question with what intent the act was done is to be determined by the jury ; and it may be inferred from the course of the dealings between the parties.

What evidence is sufficient to present a question for the jury whether certain transactions amounted to gambling contracts, considered.

(O'BRIEN, J., dissenting.)

APPEAL by the defendant, Howard G. Badgley, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 12th day

of January, 1892, upon the verdict of a jury for $2,562.28, rendered by direction of the court after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 9th day of February, 1892, denying the defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Edwin B. Leavitt,* for the appellant.

*Wolff & Hodge,* for the respondents.

Follett, J.:

Hedge, the plaintiffs' principal witness, and with whom the defendant had his transactions, was the New York agent of the plaintiffs. He testified: "In these transactions I was associated with Dwight and Gillette as broker, and I received my commissions from them, and in each one of these transactions I was paid my commissions by Dwight and Gillette, the plaintiffs."

The defendant testified: "Q. What was your intention in regard to these transactions and to the delivery of this wheat and the purchase and sale of it at the time you made these transactions? A. My intention was entirely to buy and sell on options, and to adjust the difference. Q. Between the market price of buying and the market price of selling? A. *Yes; that was distinctly stated to Mr. Hedge.* Q. *Did he state that to you?* A. *That was distinctly understood.* Q. Was there anything said in regard to how the profits or losses should be adjusted? A. Most assuredly. Q. What was said? A. I cannot remember the specific conversation, but the substance of it was he would buy and sell on options, and the difference I should have, if any, in my favor. Q. But if it was a loss, you should lose what you put up? A. Yes. Q. And that was so in regard to each one of these transactions? A. Yes, each and every one."

Here is positive evidence that it was distinctly stated between the plaintiffs' agent and the defendant that the contracts were to be gambling contracts. The knowledge of the plaintiffs' agent is their knowledge, and it is binding on them. It is conceded that none of the grain mentioned in these transactions was ever delivered, and there is no evidence that the plaintiffs owned any grain, or that they purchased any for delivery to the defendant. All of the

purchases were for future deliveries, and the statements of the transactions rendered by the plaintiffs and their bill of particulars corroborate the testimony of the defendant that the transactions were intended by both parties to be wager contracts.

The plaintiffs' agent did not deny that he had the conversation with the defendant as testified by defendant. It is true that he testified that he intended that the grain should be delivered. It is competent for a person to testify that he engaged in a transaction in good faith, or with a particular intent, but if the transaction be such that from it, or from the other evidence in the case, a different intent may be fairly inferred, the question with what intent is one for the jury. If the testimony of a party that he committed an act, which, if done with a lawful intent, would be innocent, but, if with an unlawful intent, a crime, is to be held conclusive, convictions in criminal cases in which intent is a material fact will be quite difficult.

The intent with which those parties bought and sold may be inferred from the course of dealing between them. (*Kenyon* v. *Luther*, 4 N. Y. Supp. 493 ; S. C., 19 N. Y. St. Repr. 32.)

I think the evidence presented a question of fact for the jury, and that the court erred in directing a verdict for the plaintiffs.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

PARKER, J. concurred.

O'BRIEN, J. (dissenting):

The action was brought to recover upon an account for certain goods purchased, services rendered and moneys advanced. The plaintiffs were commission merchants and brokers in Chicago. Through one Hedge, their agent at New York city, they had transactions with the defendant, which consisted in the purchase and sale for him of wheat and corn, which resulted in a loss, and for which, less the amount already paid by defendant, the action is brought.

Though two exceptions were taken to rulings upon evidence, one of which alone is urged, it is unnecessary to discuss them, as a mere examination will demonstrate that they are untenable. The substantial and important question, going directly to the merits, is

whether or not the direction of a verdict in plaintiffs' favor was right.

The controversy centered upon whether the purchases and sales were actual transactions or mere bookkeeping, the form of actual transactions being assumed, but the real intent of the parties being to gamble upon the differences between the market value and the contract price. Appellant insists that there was sufficient evidence to render it necessary, on his request, for the trial judge to submit the question to the jury, whether it was the intention of the parties that the grain purchased or sold should not be delivered, and that only the difference between the contract and market price should be adjusted, thereby rendering the contracts void as mere wagers; and that the direction of a verdict against him was error.

Two witnesses, Hedge and Palmeter, who represented plaintiffs, swore in positive terms that it was not their agreement or intention to deal in differences, the latter testifying that the orders were executed by his telegraphing to and receiving a reply from Chicago that the firm there had bought the wheat on the exchange or board of trade, and that the wheat was ordered to be ready for defendant at the time it was contracted to be delivered. Defendant, on the other hand, testified that he had no intention to contract for delivery of either wheat or corn, and that the understanding was a contract to merely speculate in differences. Defendant also testified that the substance of the conversations between himself and the plaintiffs' agent as to the character of these transactions was, that he, the plaintiffs' agent, would buy and sell on options, the differences, if resulting favorably, to go to defendant, and if a loss, to be paid by defendant.

If the question were solely as to defendant's intent this testimony would have been sufficient to require its submission to the jury. It was necessary, however, for defendant, in support of the burden placed on him of establishing the defense of a wagering contract, to give some evidence tending to show, not that he alone, but that both parties to the transaction intended to gamble, the rule being, "When it is necessary to prove concurrence of intent, as in an illegal agreement, the intent of each must be proven." This rule was laid down in the opinion of this General Term on the former

appeal (14 N. Y. Supp. 498), and finds support in abundant authority.

Now, who were the parties to these contracts? Certainly not the plaintiffs and the defendant. The defendant never contracted to sell to or buy from the plaintiffs any wheat. As said in *Lehman* v. *Strassberger* (2 Wood C. C. 554), which was an action in many respects similar to the case at bar: "The parties with whom Strassberger contracted were persons other than Lehman Brothers, whose names are not disclosed, and Lehman Brothers were only factors of Strassberger to make contracts with other parties," the plaintiffs being mere agents for the defendant in the transaction.

In that case, where the brokers had advanced money to the principal to pay losses incurred in an illegal transaction, and took his note for the money so advanced, it was held that a recovery could be had upon such note.

The case at bar, for the plaintiffs, is stronger than the one cited, because, even though it be assumed that plaintiffs were bound by the knowledge of their agent that the defendant intended not to buy or sell wheat for actual delivery, but only to adjust differences, no evidence was offered tending to show that the persons with whom the plaintiffs dealt on behalf of the defendant had a similar intention not to receive or deliver the actual commodity, pursuant to the contract made. On the contrary, the only testimony showing the intention of the undisclosed principals with whom the defendant, through plaintiffs, contracted, is, that the transactions between them were regulated and controlled by the rules of the Chicago Board of Trade, which will not be presumed to have adopted an illegal course of business.

As said in *Story* v. *Salomon* (71 N. Y. 422): "We should not infer an illegal intent unless obliged to. * * * We may guess that the parties were speculating upon the fluctuations in the price of the stock, and that the defendant was not to be required to take or deliver any stock in any case, but simply to pay differences. But a contract which can have legal interpretation and effect should not be condemned, without any proof, in that way."

These cases, relied upon by defendant, were different in their facts, and are easily distinguishable. Thus, *Peck* v. *Doran* (57 Hun, 345) was an action to recover, under the statute, money lost by plain-

tiff under a wagering contract with defendant upon the market price of wheat. It was therein testified that the defendant's agents at the commencement of the dealings had stated that " they assumed their orders and booked them themselves ; that they had no wheat to deliver and didn't expect their customers to want any wheat ; that it was merely to adjust the difference as between the market price and the prices marked on the slip " (contract).

*Kenyon* v. *Luther* (4 N. Y. Supp. 498) was an action brought, as here, to recover for commissions earned and losses sustained by plaintiff. By evidence, excluded and excepted to, defendant offered to prove, not only that he did not intend to purchase any wheat, but also the course of dealing between plaintiff and the person in whose name the contract was made, and thus to show circumstances which might have established, or tended to establish, the fact that the same intent existed on the part of the plaintiff. The opinion, after referring to the rule that in the absence of evidence to the contrary an illegal intent will not be presumed, continues : " We are unable to say that if the defendants had been permitted to prove their intent and the course of dealing between the plaintiff and the person in whose name the contract was made, that they would not then have furnished evidence which would have been sufficient to establish their defense, or at least sufficient to have made a question of fact for the jury."

We start, therefore, with the well-settled legal proposition that the burden of proof was on the defendant to establish his defense. This required that he should prove or present sufficient evidence to make it a question for the jury, that the transaction as between all the parties was a wagering contract. If here it had been shown, as in *Peck* v. *Doran* (*supra*), that the contract was really one made between the plaintiffs and the defendant, then unquestionably there would have been sufficient evidence, not only of defendant's intention, but also of the mental condition of the plaintiffs' agent, which would have been binding upon them as to their intent. Thus, in addition to defendant's own testimony as to the conversation between him and plaintiffs' agent, the accounts rendered would be consistent with the view that there was an intention on plaintiffs' part to deal only in differences. But when we remember that the contract was made with third persons as affecting whom not a scintilla of evi-

dence was offered, such accounts are equally consistent with the view of actual transactions. Upon such evidence, equally consistent with two diverse views, one of which would uphold the contract as legal and the other condemn it as illegal, the former view should prevail.

Put in its strongest light all that the defendant's evidence tended to prove was, that the plaintiffs as his brokers had knowledge of his intent not to actually receive or deliver wheat, but merely to settle differences upon the rise and fall of the market. But this, without evidence that the persons with whom the contract was made had a similar intent, would not stamp the contracts themselves as wagering contracts, and thus illegal, because here again, until the contrary was shown, the legal presumption would be that they were valid. No proof was offered, except by plaintiffs, as to the manner of executing the orders ; and yet, although they testified directly to the contrary, we would have to assume, in order to sustain defendant's position, that a jury would be at liberty, without proof, to guess and thus decide that no wheat or corn was ever bought or sold by plaintiffs for defendant's account, although, as stated, the only evidence given was all the other way.

Appellant contends, however, that as such witnesses were interested, it was for the jury to determine the truth or falsity of their testimony. We think that in appealing to this rule the appellant overlooks the fact, already twice adverted to, that the burden of showing the transaction to be an illegal one was on him, and that the direction of a verdict resulted from his failure to sustain such burden by any or sufficient proof to make it proper or essential to submit the question to the jury. Inasmuch as the quantum of proof to be presented in a case like this was very fully and ably discussed in *Bigelow* v. *Benedict* (70 N. Y. 207), it is unnecessary for us to restate it. As the defendant failed to offer any evidence tending to show the intent of the persons with whom the plaintiffs on his behalf contracted for the purchase or sale of wheat, there was no question for the jury, and the direction of the trial court was right.

The judgment should, therefore, be affirmed, with costs and disbursements.

Judgment and order reversed and a new trial granted, with costs to the appellant to abide the event.