Anderson v. Etter.

No. 11,690.

ANDERSON v. ETTER.

FRAUDULENT CONVEYANCE.—*Subsequent Purchaser.*—A conveyance of land executed for the purpose of defrauding creditors is binding against a subsequent grantee of the same grantor, unless such subsequent grantee establish some additional ground of relief. That the conveyance to defraud creditors was a violation of a criminal statute can not of itself serve as such additional fact.

SAME.—*Voluntary Conveyance to Defraud Creditors.*—A conveyance of land will not, in this State, be held void in favor of one who subsequently purchases for value, in good faith and without notice, from the same grantor, solely upon the ground that the prior grantee was a volunteer; but if such prior conveyance, besides being voluntary, was a part of a scheme to defraud creditors, of which the voluntary grantee had notice, his conveyance will be void as to such subsequent grantee.

From the Montgomery Circuit Court.

*G. D. Hurley, B. Crane, P. S. Kennedy, S. C. Kennedy* and *J. F. Harney,* for appellant.

*T. E. Ballard* and *M. E. Clodfelter,* for appellee.

MITCHELL, J.—Jacob R. Etter filed a bill in equity in the court below, praying that his title to certain real estate, therein described, be quieted, and that he might be relieved from a certain judgment taken against him in the Montgomery Circuit Court, which affected his right to the possession of the land in controversy, and asking further, that his right to re-

deem under a sale made upon a decretal order, foreclosing certain mortgages, might be established upon equitable grounds.

The facts are comprehensively set out in a special finding of the court, and as the rights of the parties must depend upon a determination of the law upon the facts found, no further notice need be taken of the pleadings, which are so voluminous as to forbid any attempt at a statement of the issue.

From the finding of the court, it appears that on the 4th day of April, 1878, one Robert F. Hart was the owner of a tract of land in Montgomery county, and that prior to that time, he had executed two mortgages on the premises to secure two several debts, amounting to about $700. Becoming financially embarrassed, he and his wife, on the date mentioned, conveyed the land to Louisa Stringer who, on the same day, conveyed it to Jacob R. Etter. Both the conveyance from Hart to Mrs. Stringer and that from Mrs. Stringer to Etter are found to have been made wholly without consideration, and with the purpose, on all hands, to defraud Hart's creditors, but without any *actual intent* to defraud Anderson or any other subsequent purchaser. On the 17th day of April, 1878, which was thirteen days after Mrs. Stringer conveyed to Etter, she sold and conveyed the land in dispute to Caleb H. R. Anderson, who paid therefor the sum of $1,200 in cash, he taking his conveyance subject to the mortgages previously placed thereon by Hart. At the time Anderson purchased and paid for the land, he had no notice of the previous conveyance to Etter, nor of the fraudulent purpose of Hart, Stringer and Etter. The conveyance from Mrs. Stringer to Etter was not recorded at the time of Anderson's purchase, and Hart occupied the land under a lease from Mrs. Stringer. The fact of Hart's occupancy appears in the evidence and is undisputed. In the conveyance from Mrs. Stringer to Anderson the land was misdescribed so that the deed covered an entirely different tract from that intended. On the 22d day of April, 1878, Etter surrendered his deed to Hart, and the deed coming to the possession of Mrs.

Stringer's husband was destroyed without his (Etter's) consent. Hart having meanwhile effected a compromise with his creditors, Mrs. Stringer, on the 23d day of April, 1878, voluntarily conveyed the land back to him and his wife by a correct description, she having in the meantime conveyed it to Etter and Anderson, respectively. Hart and wife subsequently, on May 13th of the same year, conveyed the land by quitclaim to Etter, which last conveyance was also voluntary.

In a few days after this Anderson commenced proceedings in the Montgomery Circuit Court for the purpose of correcting the description in his deed, and to quiet his title to the land, and to this suit Hart and wife, Stringer and wife, and Etter were all made parties. Such proceedings were had in that case that on the 29th day of May, 1879, a decree was given in favor of Anderson, reforming his deed and quieting his title. From this decree an appeal was taken by Etter to this court, which appeal resulted in a reversal of the decree of the Montgomery Circuit Court. *Etter* v. *Anderson*, 84 Ind. 333.

While the appeal was pending here Anderson sued Etter and Hart in ejectment, and on the strength of the decree above mentioned recovered a judgment, and by a writ issued thereon ousted Hart and Etter, and ever since has retained the possession of the land. From this judgment no appeal was ever taken, and it remains in full force.

Pending the appeal of the first case, the mortgages given by Hart were foreclosed, Etter having been made a party to the proceeding, and the lands were sold on the decree of foreclosure, Anderson becoming the purchaser at the sheriff's sale, for the amount of the mortgage debts and interest which he had previously purchased. Before the appeal was determined, the year for redemption expired, and Anderson received a sheriff's deed, so that by force of the erroneous judgment, which was afterwards reversed, he had obtained a judgment in ejectment and had prevented, as it is found, the redemption from the mortgage sale.

Upon the facts found the court stated as a conclusion of law, that Etter was the owner and entitled to the possession of the land, and that he had an equitable right to redeem, notwithstanding the expiration of the statutory time, and a decree was rendered accordingly.

To reverse this decree the learned counsel for appellant rest their argument, substantially, on the following propositions:

1. Etter having received his deed in fraud of Hart's creditors, and in violation of section 2156, R. S. 1881, of the act defining crimes, it is contended that it is absolutely void for all purposes.

2. The conveyance to Etter having been made without any consideration, and to defraud Hart's creditors, it is insisted that it can not prevail as against the title of a subsequent *bona fide* purchaser for value without notice.

For the appellee it is contended that, conceding that the conveyances were fraudulent as to Hart's creditors, yet, inasmuch as Anderson was not a creditor of Hart, and because the conveyances were binding on the parties thereto, and all others except creditors, and Anderson's grantor having conveyed to Etter and parted with all the title she had in the land before she conveyed it to him, he, consequently, took nothing by his deed, and can make no question concerning the fraudulent purpose which was had at the time respecting Hart's creditors ; that being a purchaser in good faith will not protect him, even as against a volunteer who has a legal title.

It is further contended on Etter's behalf, that the judgment in ejectment having been obtained, and the title in the foreclosure proceeding having accrued against him, while his hands were tied by means of the first judgment, which was afterwards reversed as erroneous, and the judgment in ejectment and sheriff's title being in a measure predicated thereon, he must be restored to the situation he was in before the erroneous judgment was obtained.

That an executed conveyance made for the purpose of de-

frauding creditors is binding as between the parties, can not be disputed, and that there is a statute making it a misdemeanor to make or receive a conveyance for such purpose, in no wise affects the question. It is equally binding, except as it may be controlled by other considerations, when fully executed, whether it is an infraction of a criminal statute or not.

Where, in pursuance of an unlawful scheme, in which persons have voluntarily engaged, property is conveyed, the law will not unravel the transaction after it has been carried into execution, for the purpose of enabling those involved to recover what may have been lost. The parties, and all others involved in the illegal scheme, will be left in the situation which they have chosen for themselves. This is the general rule. Whether to this, as to other general rules, there are exceptions, we need not now inquire.

As, therefore, a conveyance made to defraud creditors is binding on the parties to it when it is fully executed, it is likewise binding on a subsequent grantee of the fraudulent grantor, unless such subsequent grantee establish as the basis of his right to relief some other ground, in addition to the fact that it was made to defraud creditors; and that such conveyance is a violation of a criminal statute, is nowhere, so far as we know, of itself a ground which will serve as the basis upon which a subsequent purchaser may avoid a prior conveyance made for the purpose of defrauding creditors.

It was held in *Etter* v. *Anderson, supra,* as it had been in many previous cases, that a conveyance made and received for the purpose of defrauding creditors, is illegal as to creditors only, and it was there said, quoting from *Edwards* v. *Haverstick,* 53 Ind. 348, "As between the parties, and as to all others than creditors, it is legal and valid, and can be enforced in all of its terms as any other contract."

The result of the foregoing rule is that none but creditors can make the fact that the conveyance was made in fraud of their rights the basis of an action to set it aside on that account.

It does not follow from this, however, that one who is a purchaser in good faith may not, as against a mere volunteer, make the fact that he is a purchaser in good faith the basis of an attack, and supplement his attack from that point, with proof that in addition to being a volunteer the conveyance held by such volunteer originated in a fraudulent scheme.

Under the statute of 27 Elizabeth, the rule was settled, and still prevails in England, that all voluntary conveyances might be avoided by subsequent purchasers, who paid a valuable consideration, even though such purchaser had notice, and notwithstanding the voluntary conveyance was made without any fraudulent intent whatever.

The fact that the prior conveyance was voluntary under that statute as the law thereunder was administered, raised a conclusive presumption of fraud in favor of a subsequent purchaser, even with notice. The current of American decisions was, that if the subsequent purchaser had notice, and the prior voluntary conveyance was made without any fraudulent purpose, it would not be set aside.

Accordingly, it was held in *Stanley* v. *Brannon,* 6 Blackf. 193, following *Cathcart* v. *Robinson,* 5 Pet. 264, that a subsequent purchaser with notice, no fraudulent intent appearing, was not within the protection of the statute of 1838. This statute embodied some of the features of 13 and 27 Elizabeth.

The rule which seems to prevail generally is stated as follows: "A conveyance *actually fraudulent* is void against a subsequent purchaser for a valuable consideration, even *with* notice; and a voluntary conveyance is presumptively fraudulent against a subsequent *bona fide* purchaser *without* notice." *Gardner* v. *Cole,* 21 Iowa, 205; *Lerow* v. *Wilmarth,* 9 Allen, 382 (14 Am. Dec. 705 n.), and cases cited; *Hurley* v. *Osler,* 44 Iowa, 642; *Anderson* v. *Green,* 7 J. J. Marsh. 448; Wait Fraud. Conv., section 369, *et seq.;* May Fraud. Conv. 169; 2 Pomeroy Eq. Jur., section 794.

The rule above stated has been modified by construction in some of the States, and by statute in this State, to the extent

that no conveyance or charge upon land shall be adjudged fraudulent, as against subsequent purchasers, " solely on the ground that it was not founded on a valuable consideration." R. S. 1881, section 4924 ; *Pence* v. *Croan,* 51 Ind. 336.

Sections 4915 and 4916, which embody the equitable rules of the common law on the subject, as well as the spirit of the statute of 27 Elizabeth, provide, in substance, that all conveyances of land shall be deemed void which are made with intent to defraud subsequent purchasers for a valuable consideration without actual or legal notice thereof, at the time of such purchase, and if it appear that the grantee in such conveyance, or the person benefited thereby was privy to the fraud intended, then it shall be void as to a subsequent purchaser for value with notice.

Construing these sections with section 4924, and the question then is, can a volunteer, who has taken a conveyance in a scheme to defraud creditors, be heard to say, as against a good faith purchaser without notice, that the fraud which was actually intended was aimed at creditors,.and not at subsequent purchasers? In other words, can he, while admitting that he is both a volunteer and a fraudulent grantee, defeat the claim of the purchaser for value, by alleging and proving, or if it appears, that the particular fraud intended was not the one actually perpetrated ?

The basis of Anderson's right in this controversy is that he is a purchaser in good faith for a valuable consideration without notice, and that Etter's (the prior grantee's) title is not founded on a valuable consideration. The statute above referred to provides that Etter's title shall not be adjudged fraudulent *solely* on that ground. But for this statute, under the rule prevailing, his title would fall upon the mere showing that Anderson bought and paid for the land without notice, and that he was a volunteer. When, in addition to that, it is conceded, or alleged and proved, that Etter's title originated in a scheme to defraud Hart's creditors, we think he should not be heard to say in a court of equity, while attempting to

hold the fruits of that scheme, against an innocent purchaser, that it was not also a part of the scheme to perpetrate the identical fraud which was accomplished. While, under the statute, the conclusive presumption will not be indulged that the deed was fraudulent, from the mere fact that it was voluntary, yet when it is conceded that in addition to its being voluntary it was taken in a fraudulent scheme in which the holder was embarked, then a conclusive presumption arises that that scheme was to defraud the innocent purchaser. When the premise is conceded, that he is both a volunteer and a fraudulent grantee, the conclusion follows irresistibly, that the conveyance is void as to à subsequent good faith purchaser. After that admission he will be estopped in a court of conscience from saying that the result of his fraudulent scheme was not the result intended.

The case under consideration is, in our opinion, covered in principle in all its essential features by the case of *Paine* v. *Doe*, 7 Blackf. 485.

As it is expressly found that Anderson purchased without notice, we need not inquire what effect notice of the fraudulent purpose for which the deed was made would have had upon his rights, nor need we determine what effect the recording of Etter's deed would have had. It will be observed, in the case of *Paine* v. *Doe, supra*, that the voluntary deed was on record when the subsequent purchaser took title, and yet it was held that because the first deed was voluntary, and was made to evade the payment of debts, it was fraudulent as against a subsequent purchaser.

Our conclusion upon the facts as found by the court is that Etter was entitled to no relief whatever.

We have examined the points made on the cross errors assigned by the appellee, and without extending this opinion we think there was no error in the rulings of the court which are therein complained of.

All of the facts relating to the whole controversy are fully

Anderson v. Etter.

found by the court, and upon the facts found complete justice may be done to the parties.

The judgment of the court below is reversed, with costs, with directions to the court to state conclusions of law on the facts found in accordance with this opinion, and to render judgment accordingly.

Filed April 28, 1885.

## ON PETITION FOR A REHEARING.

ELLIOTT, J.—We have again given this case consideration, and find no reason to change our opinion. Much stress is laid upon the fact that there was no intention to defraud the appellant, but this fact is not the important one ; for the strong and ruling fact remains, that the appellee was engaged in a fraudulent scheme to defraud the creditors of his grantor, and was a mere volunteer. The status he occupies entitles him to no consideration at the hands of a court of equity except as against his grantor and privies. Volunteers, even if free from fraud, can not invoke the assistance of a court to establish a right, although courts will sometimes interfere to preserve a *status quo* at their request. But here the volunteer was guilty of fraud, and relies upon the bare color of right given him by his fraud to defeat a *bona fide* purchaser for value. If such a volunteer can succeed in such a case, then a right of action can arise out of a fraud ; but one of the oldest maxims of the law is that no right of action can arise out of a fraud. Surely no case could call more strongly for the application of this rule than the present.

Counsel say that the appellant is not a good faith purchaser, but an adventurer. The finding of the court is that he did buy in good faith, without notice, and did pay twelve hundred dollars for the land.

The finding is that the conveyance was made to defraud creditors, and that it was "received by Louisa Stringer and the plaintiff for that purpose." We did not, therefore, indulge in presumptions of fraud, but accepted the direct find-

ing of the trial court upon this point. We accepted this fact, and from it assumed, as the law requires us to do, that the appellee's position was not such as entitled him to come into a court of equity, assert the title founded in fraud, and thereby defeat an innocent purchaser for value. We did not decide that if he had secured a perfect title prior to the time the good faith purchaser secured his conveyance, the latter could have prevailed, for the reason that this was not the question before us. The question, as we understood it, and still understand, is, Will a court of equity assist a fraudulent grantee to make good his corrupt and fraudulent title at the expense of a good faith purchaser?

Counsel cite cases to prove that fraud is a question of fact, as though this were a doubtful proposition. We do not doubt this general proposition in the least, nor did we intimate in our former opinion anything of the kind; we accepted as true the finding of the court that the appellee was guilty of fraud, and decided that this fraud might be used to defeat him by an innocent purchaser for value. We adhere to the decision that having entered into a fraudulent and corrupt scheme we will presume that it affected a *bona fide* purchaser, in so far as to enable him to assert his clean and honest title against the appellant's corrupt and fraudulent one. We decided, and we meant to decide, that fraud as a fact was found to exist, and that as it did exist, and as the appellee was both a volunteer and a wrong-doer, he can not defeat a *bona fide* purchaser by any title founded on that fraud.

Counsel are wrong in asserting that the opinion infers fraud as a matter of law; it does no such thing; but it does declare, and rightly, that where fraud is found to exist as a fact, the court will attribute to that fraud its legal consequences.

The former opinion does not controvert the general doctrine declared in *Etter* v. *Anderson*, 84 Ind. 333, that only creditors can set aside a conveyance made to defraud them; but this is not the question here, for here there is no attempt to set aside a perfected conveyance, but a resistance to a vol-

unteer's making good, through the aid of a court of equity, his corrupt and fraudulent title, against a purchaser in good faith who has paid full value. This question was not presented in *Etter* v. *Anderson, supra,* and of course was not decided. *Paine* v. *Doe,* 7 Blackf. 485, does sustain our former opinion, as does also the case of *Second Nat'l Bank* v. *Brady,* 96 Ind. 498, *vide* p. 506.

Petition overruled.

Filed June 27, 1885.