New v. Walker.

No. 12,851.

NEW v. WALKER.

| 108 | 365 |
| --- | --- |
| 142 | 155 |
| 108 | 365 |
| 144 | 668 |

PATENT RIGHT.—*Regulation of Sale by State.—Police Power.—Constitutional Law.*—The statute of this State requiring the vender of patent rights to file with the county clerk copies of the letters patent, and to make an affidavit that the letters are genuine and unrevoked, and that he has authority to sell, is a police regulation, and constitutional and valid.

SAME.—*Promissory Note.—Words Required to be Inserted in.*—The provision in such statute that the words "given for a patent right" shall be inserted in any obligation taken from the vendee of a patent right, is also a police regulation, but, aside from that, it is valid as a regulation concerning promissory notes.

SAME.—*Sale of Right to Use and Manufacture.—Interest Taken Under.*—The statute applies to a sale of the right to use and manufacture for sale and use, within a specified territory, the patented article, for such a sale is a grant of all the beneficial interest possessed by the patentee in such territory, and carries with it an interest in the patented right itself.

SALE.—*Consideration.*—One who assumes to transfer what the law prohibits him from transferring, unless he does certain acts, can not yield a valid consideration to the person with whom he deals.

PROMISSORY NOTE.— *Patent Right.— Sale.— Non-Compliance with Statute.— Notice of Consideration.*—A promissory note, taken by the vender of a patent right who has not complied with the statute, which does not contain the words "given for a patent right," is inoperative as between the parties and as to one who buys with notice that it was given for such right, unless the latter affirmatively shows that his endorser was a good-faith purchaser.

SAME.—*Inquiry.*—Knowledge that a note, which does not contain the words required by the statute, was given for a patent right, puts a purchaser upon inquiry as to whether the vender of the right had complied with the law regulating sales thereof.

SAME.—*Payable to Bearer.—Negotiability.*—A note payable to bearer is negotiable as commercial paper, if it possesses the other essential requisites of such instruments.

SAME.—*Statute Declaring Void.—Illegal Consideration.*—Where a statute, in direct terms, declares void a promissory note when given for a vicious consideration, it is ineffective even in the hands of a good-faith holder.

SAME.—*Innocent Holder.*—The statute regulating the sale of patent rights does not either expressly or by necessary implication declare void a note taken by a vender who has not complied with the law; and where a negotiable note is executed to such person, it is valid in the hands of an innocent holder.

PLEADING.—*Erroneous Ruling Upon Not Cured by Special Finding.*—Error in

sustaining a demurrer to a good reply, to which ruling an exception is duly taken, can not be cured by the special finding.

From the Hamilton Circuit Court.

*B. F. Davis, J. Brownfield, T. J. Kane* and *T. P. Davis,* for appellant.

*R. R. Stephenson* and *W. R. Fertig,* for appellee.

ELLIOTT, C. J.—The complaint of the appellant is based on a promissory note written in the usual form, payable in a bank of this State, and payable to bearer.

The answer alleges that the note was executed in consideration of the sale and transfer to the appellee of the right to use, and sell for use, in a designated part of the State, an agricultural boiler and steam feeder, for which Puntan, to whom the note was executed, had obtained letters patent; that the sale and transfer of the patent took place in Hamilton county, in this State, on the 10th day of June, 1884; that Puntan had not then filed with the clerk of the court of that county a copy of his letters patent, nor had he filed an affidavit that the letters were genuine and had not been revoked, and that he had authority to barter or sell the right to use the patented article; nor was there any clause in the note stating that it was "given for a patent right." It is also averred that the appellant knew that the note was given in payment for a patent right before she purchased it.

We have had occasion to consider the validity of our statute imposing certain duties upon the venders of patent rights, and have expressly decided that, in so far as it requires an affidavit from the vender of his authority and charges him with the duty of filing a copy of the letters patent, it is not in conflict with the Federal Constitution. *Brechbill* v. *Randall*, 102 Ind. 528 (52 Am. R. 695).

The reasoning of other cases decided by this court carries the doctrine somewhat further, and they lay down a principle that would, if carried to its logical conclusion, sustain the entire statute. *Fry* v. *State,* 63 Ind. 552; *Toledo Agr'l Works*

v. *Work*, 70 Ind. 253; *Central Union Tel. Co.* v. *Bradbury,* 106 Ind. 1; *Hockett* v. *State*, 105 Ind. 250 (55 Am. R. 201)..

We accept as correct the conclusion to which the reasoning of these cases leads, and affirm that our entire statute is valid, and that it neither usurps any powers of the Federal government nor encroaches upon the National Constitution nor violates any law of Congress. This conclusion is fully supported by the decision of the Supreme Court of the United States in *Patterson* v. *Kentucky*, 97 U. S. 501, and by other decided cases. *Tod* v. *Wick*, 36 Ohio St. 370; *Haskell* v. *Jones*, 86 Pa. St. 173.

There are, as we know, cases which assert a different doctrine, but they are all based on the decision in *Ex parte Robinson*, 2 Bissell, 309, and as that decision has been overthrown, the cases based upon it must fall. *Toledo Agr'l Works* v. *Work, supra; Fry* v. *State, supra; Brechbill* v. *Randall, supra.*

In imposing upon venders of patent rights the duty of filing affidavits and copies of letters patent, no powers vested in the Federal government are usurped, nor are the provisions of the National Constitution trenched upon, for nothing more is done than to prescribe a system of procedure for the protection of our citizens against imposition and fraud. No more is done by that part of the statute which requires affidavits and copies of letters patent to be filed, than to establish regulations for the government of the sale and transfer of a peculiar species of intangible property, which, in its very nature, is so essentially different from other property that it must necessarily be transferred in a different manner. The regulations established by our Legislature are in the nature of police regulations; their purpose being to protect our people from being imposed upon by men who have either no authority to sell patent rights or no patent rights to sell. It has been directly decided by the Supreme Court of the United States, as well as by this court, that the National Congress can not make police regulations for the protection of the

people of the States.   *United States* v. *Dewitt*, 9 Wall. 41 ;
*United States* v. *Reese*, 92 U. S. 214 ; *Western Union Tel. Co.*
v. *Pendleton*, 95 Ind. 12 (48 Am. R. 692) ; *Brechbill* v.
*Randall, supra ; Hockett* v. *State, supra.*

As the Federal Legislature can not enact police regulations
which will yield the citizens of the State just protection, it
must be that the State Legislature may enact such regulations,
or the citizens be left without protection.   We are unwilling
to declare that venders of patent rights can not be restrained
by reasonable police regulations, and we do, therefore, declare,
that the provisions of the statute under immediate mention,
being in the nature of police regulations, are constitutional
and valid.

The provision requiring the insertion of the clause, "given
for a patent right," in promissory notes, we think, is also in
the nature of a police regulation ; but independent of this
consideration, we regard that provision of the statute as valid,
because it simply prescribes what shall be written in a prom-
issory note given for a particular class of property.   For more
than half a century we have had statutes governing promis-
sory notes, and making peculiar regulations concerning them,
and during all those years their validity has remained un-
challenged.   To us it seems quite clear that such statutes are
valid, and that the statute under discussion belongs to that
class.   This view of the subject finds strong support in the
well reasoned case of *Tod* v. *Wick, supra,* where it was said ;
"The right to regulate the form and prescribe the effect of
paper taken in commercial transactions has always been re-
garded as belonging to the States."   In this view of the sub-
ject we concur, and our ultimate conclusion on this branch
of the case is that the statute is valid in all its parts.

Where the assumed owner of personal property undertakes
to transfer it in a method forbidden by statute, he can take no
benefit from his illegal act.   A patent right is property, and
the States may regulate the method of its transfer, as they
may any other property which is brought within its jurisdic-

New v. Walker.

tion, provided, of course, no essential right in the property is taken away, and there is no encroachment upon the powers of the Federal Government. *Tod* v. *Wick, supra; Ames Iron Works* v. *Warren,* 76 Ind. 512 (40 Am. R. 258).

It is inconceivable that the vender of personal property, whether it be intangible property like a patent right or not, can acquire any rights from acts performed in direct violation of law, since enforceable legal rights only spring from transactions which violate no principle of law or equity. A legal right can not arise out of a wrong, so as to benefit the wrongdoer.

In our opinion a promissory note, executed in direct violation of a mandatory statute, is inoperative as between the parties and those who buy with notice. Where a statute, in imperative terms, forbids the performance of an act, no rights can be acquired by persons who violate the statute, nor by those who know that the act on which they ground their claim was done in violation of law. A promissory note, executed in a transaction forbidden by statute, is at least illegal as between the parties and those who have knowledge that the law was violated. It is an elementary rule that what the law prohibits, under a penalty, is illegal, and it can not, therefore, be the foundation of a right as between the immediate parties. *Wilson* v. *Joseph,* 107 Ind. 490; *Hedderich* v. *State,* 101 Ind. 571 (51 Am. R. 768); *Case* v. *Johnson,* 91 Ind. 477.

This rule also applies to those who assume to purchase from one of the parties to the transaction, but purchase with full knowledge that the law has been transgressed.

A man who assumes to transfer a right which the law forbids him from transferring, unless he does certain prescribed acts, can not yield a valid consideration to the person with whom he deals. Where one assumes to transfer what the law prohibits him from transferring, he parts with no rights which, as to him, at least, will constitute a sufficient consideration for another's promise. If the question were between

the immediate parties, we should have no hesitation in de-
claring that, if the promissory note sued on was executed for
a patent right, transferred in violation of the statute, there
could be no recovery.   Nor do we think there is any doubt
that the rule should be applied where the holder of the
note purchased with full knowledge of the character of the
transaction.

The contention of the appellant, that the statute applies
only to the sale of the patent right itself, and not to the sale
of the right to use and to manufacture for sale and use the
patented article, can not prevail.   It is a sale of the patented
right to sell the exclusive right to use and manufacture for
sale and use the thing patented, for such a sale carries with
it an interest in the patented right itself.   Where the vender
sells a right to use and to manufacture for sale and use during
the existence of the patent, he parts with all substantial rights
in the patent in the territory embraced in the assignment.
Curtis Patents, section 181; Walker Patents, section 296.

Where it is evident that the intention of an instrument is
to vest in the assignee the whole and exclusive interest in a
patent right for a designated territory, no ingenuity in fram-
ing the instrument will carry the transaction beyond the reach
of the statute.   Schemes, however cunningly contrived, or
subterfuges, however ingeniously devised, will not enable the
vender of the patent right to evade the statute.   Here, as
elsewhere in jurisprudence, the inquiry which rules is, what
was the substance of the transaction? and as that appears so
will be the judgment of the court.

In the case before us, there was a grant of all the benefi-
cial interest that the patentee possessed, and the case is, there-
fore, within the statute.

The answer avers that the appellant had knowledge of the
consideration for which the note was executed, and we think
she was bound to know that the note was inoperative unless
the vender of the patent right had obeyed the law. She knew,
as the answer avers, that the note was given for a patent

right, and she was bound to know, as matter of law, that un- less the vender had obeyed the law he could not yield a valid consideration to the maker of the note. On the face of the note it appeared that the statute had not been complied with, and this, joined to her knowledge of the consideration yielded for the note, gave her such notice as at least put her on in- quiry. 1 Daniel Negotiable Inst., section 198. It became her duty, with the knowledge she possessed, to ascertain whether the vender had complied with the statute, for upon his compliance with the statute depended the validity of the note. If there was a violation of the law there could not be, as she must have known, any consideration for the promise of the purchaser of the patent right. The case is a peculiar one, for a statute so limits the powers of a vender of patent rights that he can not yield a consideration for a promise to pay for the assignment of a patent right, unless he has per- formed the duties imposed upon him. His right to secure a valid promise is restricted by the law, for, if he transgresses the law by making a transfer which it forbids, his contract is illegal, and can not constitute a valid consideration for the promise of the person with whom he deals. It seems very clear, therefore, that one who has knowledge of the consid- eration of the promise, and finds the note not such as the statute requires, should ascertain whether the acts essential to give the vender capacity to make a legal contract have been performed. There is a well defined and fully recognized dis- tinction between promissory notes made illegal by statute, and those made inoperative between the immediate parties, because the consideration is one that the general rules of law con- demn. It is, indeed, generally held that a promissory note expressly declared by statute to be void when given for a vicious consideration, is ineffective even in the hands of a *bona fide* holder. 1 Parsons Notes and Bills, 276 ; 1 Daniel Negotiable Inst., section 197. We do not hold, or mean to hold, that knowledge of the consideration of a promissory note will in ordinary cases put a purchaser upon inquiry ; on

the contrary, we understand the law to be that in ordinary cases knowledge of the consideration, even when imparted by the note itself, will not prejudice the rights of a good-faith purchaser, unless the consideration is such as invalidates the note or is legally insufficient. *Hereth* v. *Merchants' Nat'l Bank*, 34 Ind. 380; *Doherty* v. *Perry*, 38 Ind. 15; *Bank of Commerce* v. *Barrett*, 38 Ga. 126; *Heard* v. *Dubuque Co. Bank*, 8 Neb. 10 (30 Am. R. 811); *Stevenson* v. *O'Neal*, 71 Ill. 314. Here, however, the purchaser of a note given for a patent right is chargeable with knowledge of the law if he knows the consideration for which the note was executed to be a patent right, for the statute, in express terms, prescribes who shall have authority to vend such rights, and the transfer by one who has no such authority, but who transgresses the law in making the transfer, is not a valid consideration for the promise contained in the note.

Where it appears, as it does in the answer before us, that the note was given for a patent right, that this fact was known to the purchaser of the note before its purchase, and that the clause required by the statute was not in the note, the burden is upon the holder of the note to show that his endorser took the note without notice as to the nature of the consideration. 1 Daniel Nego. Inst., section 198.

The transfer of a patent right could not, as we have said, be a valid consideration as against the original parties or those who bought with notice of the character of the consideration, and it is, therefore, incumbent upon one who buys with that notice to show, either compliance with the law, or that his endorser was, in all essential particulars, a good-faith purchaser of the note. We do not impugn the general doctrine that one who buys from a good-faith purchaser will secure a valid right although he may himself have notice of the infirmity in the consideration, for that we regard as well settled law; but we hold that where the person who buys a note not containing the words required by the statute, and knows that it was executed for a patent right, must, at least,

affirmatively show that his endorser was a purchaser in good faith in all that the term implies. The case is closely analogous to those which hold that if a promissory note is obtained by fraud, it devolves upon the holder to prove that he was a purchaser in good faith. *Eichelberger* v. *Old Nat'l Bank*, 103 Ind. 401; *Mitchell* v. *Tomlinson*, 91 Ind. 167; *Baldwin* v. *Fagan*, 83 Ind. 447; *Hinkley* v. *Fourth Nat'l Bank*, 77 Ind. 475; *Zook* v. *Simonson*, 72 Ind. 83; *Harbison* v. *Bank, etc.*, 28 Ind. 133.

The logical result of this reasoning is that the appellee's answer exhibits a complete defence to the appellant's cause of action.

The reply of the appellant alleges, in substance, that the note was purchased by George W. New before maturity; that he paid $400 for it; that when he purchased the note he had no knowledge that it was given for a patent right; that at the time the appellant purchased the note from George W. New, she had no knowledge or information that it was executed for a patent right, and that she purchased the note before maturity and paid full value for it.

A material question involved in a consideration of the sufficiency of this reply is the character of the promissory note on which the complaint is based; but we think that there is no serious difficulty in solving this question, material as it is, for we have no doubt that it is a commercial note, negotiable by the law merchant. A note payable to bearer is negotiable as commercial paper, if, as does this one, it possesses the other essential requisites of such negotiable instruments. *Melton* v. *Gibson*, 97 Ind. 158; *Hall* v. *Allen*, 37 Ind. 541; *Riley* v. *Schawacker*, 50 Ind. 592; Daniel Negotiable Inst., section 663.

Having determined that the promissory note, on which the action is founded, is negotiable as commercial paper, the next question is, what are the rights of the appellant as the *bona fide* holder of the paper? For there can be no doubt under the confessed allegations of the reply that she is such a holder.

She is 'such in the strongest light, for she purchased from a good-faith owner, and is herself free from fault and innocent of wrong. *Hereth* v. *Merchants' Nat'l Bank, supra; Newcome* v. *Dunham,* 27 Ind. 285.

The decisions agree, that, where the statute in direct terms declares that a note given in violation of its provisions shall be void, it is so no matter into whose hands it may pass. The rule is thus stated by the court in *Vallett* v. *Parker,* 6 Wend. 615: " Wherever the statute declares notes void, they are and must be so, in the hands of every holder; but where they are adjudged by the court to be so, for failure, or the illegality of the consideration, they are void only in the hands of the original parties, or those who are chargeable with, or have had notice of the consideration."

It is said by a late writer, in stating the same general rule, that, " when a statute, expressly or by necessary implication, declares the instrument absolutely void, it gathers no vitality by its circulation in respect to the parties executing it." 1 Daniel Negotiable Inst., section 197. We regard this author's statement as substantially expressing the general rule; and, accepting it as correct, the pivotal question is whether our statute does expressly, or by necessary implication, declare that notes given to venders of patent rights who have disobeyed the law shall be void? There is certainly no express declaration in the statute that such notes shall be void, nor do we think that there is any necessary implication that they shall be void. A man may be guilty of a misdemeanor, and yet notes taken by him in the transaction which creates his guilt may not be void in the hands of an innocent holder. A familiar illustration of this principle is afforded by those cases which declare that a note given in consideration of the suppression of a criminal prosecution is inoperative as between the immediate parties, but valid in the hands of a *bona fide* purchaser. This is the settled law, although the compounding of a felony is made a crime by statute. Our opinion is, that a statute making it a crime to take promissory notes in

a prohibited transaction does not make the notes void in the hands of innocent purchasers, although the person who violates the statute commits a crime. This conclusion is well sustained by authority. *Anderson* v. *Etter*, 102 Ind. 115; *Vallett* v. *Parker, supra;* *Taylor* v. *Beck*, 3 Rand. (Va.) 316; *Glenn* v. *Farmer's Bank*, 70 N. C. 191; *Smith* v. *Columbus State Bank*, 9 Neb. 31; *Haskell* v. *Jones, supra;* *Palmer* v. *Minar*, 8 Hun, 342; *Cook* v. *Weirman*, 51 Iowa, 561.

A party who executes a promissory note, negotiable as commercial paper, fair on its face and complete in all its parts, puts in circulation an instrument which he knows is the subject of barter and sale in the commercial world, and it is his own fault if he does not put into it the words which will warn others not to buy it in the belief that it will be free from all defences. The experience of the business world has shown the necessity of affixing to promissory notes the quality of negotiability, and commercial transactions would be seriously disturbed if notes, fair on their face and containing the required words of negotiability, were not protected in the hands of innocent purchasers. It is, therefore, not the policy of the law to multiply exceptions to the general rules governing notes negotiable by the law merchant, so that in such a case as this it can not, without an indefensible departure from that policy, be held that the promissory note is not protected in the hands of a good-faith holder.

Nor can such a step be taken without wandering from the course marked and defined by the long established principle that, where one of two innocent persons must suffer from the act of a third person, he who puts it in the power of the third to do the act must bear the loss. To our minds it seems clear that this principle rules here, for the man who executes to a vender of patent rights a promissory note, in full and perfect form, puts it in his power to wrong others by selling the note as an article of commerce.

We regard the reply as unquestionably good, and adjudge that the trial court erred in sustaining the demurrer to it.

It is contended by the appellee's counsel that as there is a special finding showing that the appellant was not a purchaser in good faith, no harm was done her in sustaining a. demurrer to the reply. We can not concur in this view. The decision in *Sohn* v. *Cambern*, 106 Ind. 302, does not sustain the counsel's position. In that case there was no demurrer, but the attack was by the assignment of errors, and, besides, all that was said in that case, which is in any degree relevant to the present subject, was addressed to the provisions of section 345 of the code respecting the overruling,— not the sustaining,—of demurrers. It can not be legally possible that if a party's reply, presenting facts which completely avoid and nullify the answer of his adversary, is held to be insufficient, the special finding can cure the error. If his pleading is overthrown, he is not entitled to give evidence in support of the theory which it asserts, and he is, therefore, necessarily and materially injured by the ruling striking it down. Where a party duly excepts to a ruling on demurrer, which overthrows a valid pleading, he does not waive any rights by suffering the case to proceed to trial, nor is he bound to offer evidence upon the subject covered by his pleading, for his exception to the ruling on the demurrer effectually asserts and preserves his rights.

Judgment reversed.

Filed Dec. 7, 1886.