No. 13,219.

## PAPE v. WRIGHT.

PATENTED RIGHTS.—*Validity of Statute.*—The statute regulating the sale of patented rights is valid.

SAME.—*Broker.—Commission.—Illegal Act of Principal.*—Where a party employs a broker to procure a purchaser for patented rights, such broker, upon procuring such purchaser, is entitled to his commission whether a sale was made or not, although his principal had not complied with the statute regulating the sale of patent rights, the broker having no knowledge of any intention on the part of his employer to violate the law.

DEPOSITION.—*Seal of Notary.—Clerk's Certificate.*—Where a notary public in a foreign State, taking a deposition, omitted his seal from the certificate, but the clerk of the county, by a proper certificate, attested to the official character and signature of the notary, there is no cause for suppressing the deposition.

SAME.—*Notice.—Motion to Suppress.—Practice.*—Where a party accepts service of notice without objecting, he can not be heard in the Supreme Court to say that the notice was insufficient. If the notice is not sufficient to authorize the taking of the depositions of all the witnesses, there should be a motion to suppress the deposition not authorized, although the court may, without error, on a motion to suppress all, suppress the one improperly taken; but a party is entitled to this only as a matter of favor.

EVIDENCE.—*Impeachment.— Character.*—Evidence impeaching the character and reputation of a witness at the time he left his former residence, the time being reasonably near the examination—about two months before—is admissible.

From the Allen Superior Court.

*L. M. Ninde,* for appellant.

*A. A. Chapin, W. S. O'Rourke, — Spencer* and — *Jenkinson,* for appellee.

ELLIOTT, C. J.—The complaint upon which this cause was tried alleges that the appellant employed the appellee to procure purchasers for patented rights of which he was the owner, and promised to pay the appellee a commission as compensation for his services; that the appellee did procure purchasers,

and that the appellant sold the rights to the purchasers procured by the appellee.

The answer of the appellant is in three paragraphs; the first is a general denial, and the second a plea of payment.

The third contains these facts: At the time the contract was entered into, the purchasers procured, and the rights sold, neither the defendant nor the plaintiff, nor any other person, had filed with the clerk of the court of Allen county copies of letters patent, nor had they, or any one, made an affidavit that the letters patent were genuine. To this answer a demurrer was sustained.

The validity of our statute regulating the sale of patented rignts has been repeatedly affirmed by this court. It is with us no longer an open question. *Fry* v. *State,* 63 Ind. 552; *Toledo Agricultural Works* v. *Work,* 70 Ind. 253; *Brechbill* v. *Randall,* 102 Ind. 528; *New* v. *Walker,* 108 Ind. 365; *Hankey* v. *Downey, ante,* p. 118.

We collected and examined the authorities in *New* v. *Walker, supra,* and we shall not again discuss them further than to refer to a very recent case decided by the Court of Appeals of New York, where the doctrine of *New* v. *Walker, supra,* was approved. *Herdic* v. *Roessler,* 109 N. Y. 127. It was said in the course of the opinion in that case: "But the law of Congress and the State law are not in conflict. The object of one is to secure to the inventor an exclusive right to use or sell his invention, and the object of the other is to protect against fraud in sales."

If the question of the sufficiency of the answers depended solely upon the validity of our statute, we should have no hesitation in adjudging the answer good; but affirming the validity of the statute does not lead to an affirmance of the sufficiency of the answer.

The case is a peculiar one. The plaintiff was employed to procure purchasers for patented rights. He was not employed to sell, but to furnish purchasers. He was acting as a broker, and as such was entitled to his commission when he

furnished a purchaser, whether a sale was consummated or not. Brokers who undertake to find purchasers earn their commissions when they bring to their principal a person willing and ready to buy. *Love* v. *Miller*, 53 Ind. 294; *Vinton* v. *Baldwin*, 88 Ind. 104, and cases cited; *Fischer* v. *Bell*, 91 Ind. 243; *McClave* v. *Paine*, 49 N. Y. 561 (10 Am. R. 431).

The question is, not whether it was illegal to sell, or offer to sell, patented rights, but whether it was illegal for the broker to attempt to find a purchaser, for, as the pleadings present the facts, the broker was not authorized to make a sale, nor was he requested to sell. All that he was engaged to do was to procure some one to buy. He was not, therefore, an agent authorized to sell, but was what the authorities denominate a middleman. *Alexander* v. *North - Western Christian University*, 57 Ind. 466; *Vinton* v. *Baldwin, supra; Redfield* v. *Tegg*, 38 N. Y. 212; *Rowe* v. *Stevens*, 53 N. Y. 621; *Rupp* v. *Sampson*, 16 Gray, 398; *Barry* v. *Schmidt*, 27 Alb. L. J. 297.

The office of a middleman is to bring the parties together, leaving to them the consummation of the sale, and he does not sell, or offer to sell, but simply sets in train preliminary negotiations. If a middleman is entitled to compensation when he procures a purchaser, then he can enforce his contract, notwithstanding the fact that his employer violates the law, for its enforcement does not require that he shall bring to his assistance the illegal contract of selling, or offering to sell, patented articles. The rule upon the general subject is that a recovery may be adjudged whenever it can be reached without the aid of an illegal contract. *Louisville, etc., R. W. Co.* v. *Buck, post*, p. 566 ; *Sondheim* v. *Gilbert*, 117 Ind. 71.

In the case of *Planters' Bank* v. *Union Bank*, 16 Wall. 483, the rule was declared to be substantially that stated by us, the court saying: " The plaintiffs do not require the aid of any illegal transaction to establish their case. It is enough that the defendants have in hand a thing of value that belongs to them." Other decisions approve this doctrine.

*Brooks* v. *Martin,* 2 Wall. 70; *Cook* v. *Sherman,* 20 Fed. Rep. 570; *Burke* v. *Flood,* 6 Saw. 220; *Lehman* v. *Strassberger,* 2 Woods, 554.

Closely analyzing the pleadings, and recapitulating somewhat, we shall find these elements present: That the undertaking was to find a purchaser; that the appellee had no knowledge of any intention on the part of his employer to violate the law; that the employer has had the benefit of the appellee's services, and that a recovery may be enforced without validating the illegal acts of the appellant. These elements are important, for they discriminate the case from that of an agent joining with his principal in a known illegal act; they mark it as a case where the principal is seeking to use his own wrong to escape payment for services rendered at his request, and they prove it to be a contract not blended with the illegal conduct and purpose of the wrongdoer. The question is not what are the rights of the public as against the appellee, but the question is as to the rights of a principal upon whom chiefly and primarily rested the duty of performing the acts required by the law as against a middleman who has done what the principal employed him to do. Proceeding upon the general principles we have stated, and guided by the authorities we have cited, our course, if we kept in the straight path marked out by them, would lead us, even without decisions more directly in point, to the conclusion that the answer is bad. But our search for direct decisions has not been unrewarded, for we have found cases strongly in point. In the case of *Crane* v. *Whittemore,* 4 Mo. App. 510, it was held that "A broker may recover his commissions for services rendered in finding a purchaser for certain goods, even though the contract of sale between the buyer and seller, made after the broker's services were performed, was immoral and against public policy as a wager contract; nor is the question affected by the broker's knowledge of the character of the contract, he not being a party thereto." The case which we cite is a much stronger case than the one

before us, especially in the particular that the broker had knowledge of the illegal character of the transaction. Here, we can not assume knowledge, for the presumption is in favor of obedience to law and in favor of fair dealing. *Curtis* v. *Gokey*, 68 N. Y. 300. In another particular the case cited is stronger than the present, for there, both parties to the illegal contract were wrongdoers, while here, the purchaser procured by the broker was guilty of no wrong, although the seller was.

In the case of *Ormes* v. *Dauchy*, 13 Jones & S. 85, it was held that a broker who brought parties together might recover his commissions, although the contract entered into between the parties brought together by him was for advertising a lottery, and such advertisements were forbidden by statute. The court there said of the contract of the brokers: "Their engagement was ended when they introduced the parties to each other, and the law allows them compensation for that particular service. The contract of the plaintiff was, in itself, therefore, lawful and free from vice, and I do not see how it can be avoided on the ground that it may have possibly facilitated an illegal transaction. It is impossible to foresee where the doctrine would carry us should it be held that the broker's contract is void because it may have some remote connection with other unlawful contracts. I am not aware of any principle which could justify this."

It is possibly true that the court pushed beyond its just limits, in applying it to the facts of the case before it, the general rule it stated. *Ormes* v. *Dauchy*, 82 N. Y. 443 (37 Am. Rep. 583). But granting this, still the rule remains in its integrity and must apply where, as here, the duties of the broker were at an end before any illegal act was done with which he was directly or remotely connected; for here, no act of his was illegal, nor did it, by any wrong of his, facilitate in legal contemplation the performance of an illegal act by his employer. In the case cited, the law positively prohibited the act which the broker brought the parties together

to perform, while here, the act was not prohibited, but might lawfully be performed by one who had complied with the statute. Here there was no general prohibition, but simply a regulation of the mode of procedure by venders of patented rights. If the sale of patented rights had been absolutely prohibited (supposing such a thing legally possible), there would be plausibility in the theory that a broker could not do any act toward bringing about a sale, for then the case would be within the rule laid down in such cases as *Biggs* v. *Lawrence,* 3 Term R. 454; *Clugas* v. *Penaluna,* 4 Term R. 466. But, as the vending of such rights is not unlawful where the statute is complied with, the appellee was not necessarily a participant in the wrong of his employer. The case falls far within the rule declared in such cases as *Pellecat* v. *Angell,* 2 Cromp. M. & R. 311; *Faikney* v. *Reynous,* 4 Bur. 2009 ; *Holman* v. *Johnson,* Cowp. 341.

As there was a general right to sell the patented rights, and as no considerations of public policy condemn the sale of such rights, sales of them are not in themselves unlawful, but only become so when made by one who has failed to do what the statute commands, and the appellee was, therefore, not bound to assume that his employer would violate the law, but against his employer, at least, the appellee had a right to assume that he would do, or had done, what the law requires. Wald's Pollock Contr. 329.

We do not, of course, question the soundness of the general rule that one who contracts to do an illegal act, or to aid in doing a wrong, can not recover compensation for his services; on the contrary, we affirm as strongly as possible the justice of that rule, but we quite as strongly deny its applicability to such a case as is here presented by the pleadings properly before us.

To apply the general rule to a case like this would result in constituting every broker a censor and guardian of his employer, and, in every case where the subject of the sale was a patented right, impose upon him the duty of ascertain-

ing that his employer was not a lawbreaker, and all for the benefit of the employer who repudiates his obligation, and endeavors to get the benefit of his broker's services without paying him any compensation. Not all general rules apply to every case, for resembling cases may fall within special rules or within exceptions to general rules.

Depositions were taken by a notary public in the State of New York, but the certificate is not authenticated by his seal. There is, however, a certificate of the clerk of the county, duly attested by a seal, wherein it is recited, among other things, that the notary before whom the depositions were taken, "was duly commissioned and sworn; that all of his official acts as such are entitled to full faith and credit, and that his signature thereto is genuine." In the face of the certificate of the clerk we can not hold that the lack of a notarial seal constituted a sufficient cause for suppressing the depositions. If there had been no certificate from the clerk a very different case would be presented.

The notice thus names the witnesses whose depositions are to be taken: "G. R. Bickford and Mrs. Bickford," and we think that, after having accepted service of the notice without objecting, the appellant can not be heard to say that the notice is insufficient.

If the depositions of two witnesses are taken, and the notice is sufficient to authorize the taking of the deposition of only one of them, the proper practice is to move to suppress the deposition not authorized by the notice. A motion to suppress the depositions of both may, without error, be overruled, although the court might, as a matter of favor and of its own volition, suppress the one improperly taken, but a party is entitled to this only as matter of favor, and not as of right.

It is a principle running through many matters of practice that an objection must not cover both competent and incompetent testimony, but must separate the incompetent from the competent. *City of Terre Haute* v. *Hudnut*, 112 Ind. 542 ;

*Day* v. *Henry*, 104 Ind. 324; *Louisville, etc., R. W. Co.* v. *Falvey*, 104 Ind. 409; *St. Louis, etc., R. W. Co.* v. *Hendricks*, 48 Ark. 177 (3 Am. St. R. 220); *Wallis* v. *Randall*, 81 N. Y. 164; *Smoot* v. *Eslava*, 23 Ala. 659 (58 Am. Dec. 310).

About the 25th of September, 1885, one of the appellee's witnesses removed from Fort Wayne to the State of New York, where his deposition was taken on the 24th day of the following November. The appellant offered evidence of the character and reputation of the witness at the time he left Fort Wayne, for the purpose of impeaching his credi- bility, but the court excluded it. This was a material error, and compels us to reverse the judgment. The evidence offered was relevant, was material, and was competent. The witness sought to be impeached gave very important testimony, and if it could have been overthrown a very essential point would have been gained by the appellant.

We can conceive of no valid reason for excluding the proffered evidence. It is true that an impeaching question should fix a time reasonably near the time the deposition is taken, but it is not necessary that it should fix that precise time. *Rucker* v. *Beaty*, 3 Ind. 70.

Counsel for the appellee say: " But in the present case the witness had been a non-resident of Fort Wayne for nearly two months, and no attempt was made to show what his character was at his then place of residence."

To our minds this statement makes clear the error of the trial court. If sixty days' residence can give a man a reputation in his new home, his conduct must be exceedingly good, or notoriously bad, to enable the persons there residing to acquire sufficient knowledge to enable them to swear that they knew his reputation ; but it is not to extraordinary things that the law looks. ' The law is a practical science, and deals with ordinary things, and not extraordinary ones, and regards what is ordinarily reasonable and of ordinary occurrence. It is reasonable in this instance to assume that the character and reputation of the witness had not changed

within two months.   If it were otherwise a roving witness could not acquire a reputation that would benefit him in time of need, or justly rise up against him when justice required. The decisions which speak of the time to which impeaching questions should be directed must be understood to mean a reasonable time.   It can not be possible that they must be directed to the very hour, day, week or month of the examination ; all that is necessary is that, giving due consideration to attendant circumstances, the questions should designate a time reasonably near the time of the examination. Our position is so strongly entrenched in reason that we hardly feel it incumbent to call authorities to our aid, but, as it is easy to do so, we do call to our support some of the many cases.   *Memphis, etc., Co.* v. *McCool,* 83 Ind. 392 ; *People* v. *Abbott,* 19 Wend. 192 ; *Dollner* v. *Lintz,* 84 N. Y. 669.

We do not affirm that it is sufficient to fix a remote time, but what we do affirm is that it is only necessary to fix a time reasonably near the date of the examination.   Reputation seldom grows in weeks or months, but is the product of time, and we can not hold, as we should be compelled to do to support this judgment, that a reputation is ordinarily gained or lost in sixty days ; on the contrary, we are firmly convinced that a man who goes to a new home, leaving a bad reputation at his old, can not so effectually cast off that reputation in his sixty days' residence at his new abode as to prevent its being given in evidence against him.

Judgment reversed, with instructions to sustain the motion for a new trial.

Filed Jan. 11, 1889.